OPINION OF THE COURT
Harold Beeler, J.
This felony narcotics prosecution, involving the street sale of some two vials of crack cocaine, raises important questions *835 concerning this court’s long-standing practice of requiring the People to produce a "positive” laboratory analysis, prior to sentence, in drug cases where a defendant has waived prosecution by indictment and pleaded guilty to a superior court information.
Defendant in this case was charged by felony complaint with criminal sale of a controlled substance in the third degree (Penal Law § 220.39), and pleaded guilty under a superior court information to the lesser crime of attempted criminal sale of a controlled substance in the fifth degree (Penal Law §§ 110.00, 220.31). Immediately following defendant’s guilty plea, the court, pursuant to its usual procedure, advised the parties that the plea was "subject to” the People’s filing a laboratory analysis on the sentence date confirming the presence of cocaine in the vials sold by defendant.
After several unsuccessful adjournments for the People to locate and file the laboratory analysis, the People advised the court that the vials in question had in fact been swallowed by the separately charged buyer in an attempt by her to "conceal the evidence” and avoid arrest. Although these sale vials were eventually recovered intact from the buyer by hospital personnel, the results of any laboratory tests on the contents thereof were never provided to the court. The police did, however, according to the People, recover from defendant’s person during a search incident to arrest, six "stash” vials that were tested and found to contain cocaine.
On this record, defendant moved prior to sentence to withdraw his plea of guilty, claiming, in substance, that the court should not proceed to sentence without a laboratory analysis confirming the presence of cocaine in the two vials defendant had admitted selling. For the reasons that follow, as outlined by this court at defendant’s June 16, 1992 sentencing, the motion to withdraw the guilty plea in this case is, in all respects, denied.
In moving to withdraw his plea of guilty, defendant misconstrues the rationale and purpose behind this court’s policy of requiring a "positive” laboratory analysis prior to sentence in drug sale cases where a defendant has waived indictment and pleaded guilty to a superior court information. In particular, defendant fails to recognize the narrow, but critical, distinction between drug sale prosecutions involving the confirmed lack of a controlled substance in the material exchanged by the seller (i.e., the laboratory analysis of the substance comes *836 back "negative”), and prosecutions where, as here, the exact nature of the substance sold has not been established by laboratory testing.
In this regard, the law is settled that the People’s inability to obtain a laboratory analysis of the substance actually exchanged by the defendant in a completed drug sale presents no legal barrier to a prosecution on that charge, provided the People are able to establish — either circumstantially or otherwise — that the substance sold was, in fact, a "controlled substance” (see, e.g., People v Boey, 127 AD2d 673, lv denied 69 NY2d 1001 [Defendant guilty of criminal sale in the third degree where, after making repeated exchanges of small plastic bags containing white powder for money to unapprehended buyers, made similar exchange with apprehended buyer who used straw to snort white substance from the bag. Police failed to recover bag sold to buyer, but recovered from defendant’s "stash” bag similar plastic bags containing cocaine]; see also, People v Christopher, 161 AD2d 896, 897; People v Lynch, 85 AD2d 126; People v Escalera, 143 Misc 2d 779 [cases holding that, in drug sale prosecutions where the substance sold is not available for analysis, drug users who can demonstrate a knowledge of the narcotic may testify as to the identify of the substance]).
In contrast, where there is conclusive proof, by way of a "negative” laboratory analysis, that the substance sold by a defendant was in fact not a controlled substance, the People are precluded from prosecuting for a completed drug sale since that oifense would, under such circumstances, be legally and factually impossible of commission (see, People v Cooke, 161 AD2d 783; see also, Penal Law § 110.10; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 110.10, at 429). And, though the People might still proceed to prosecute, even in the face of a "negative” laboratory analysis, for the lesser, "attempted” sale (see, People v Sessions, 181 AD2d 842; People v Georgens, 107 AD2d 820; People v Culligan, 79 AD2d 875), they rarely elect to do so — a decision founded no doubt on both the belief that the public interest and safety might be better served by focusing on those engaged in the distribution and sale of "real” narcotics, and on the practical difficulties associated with proving that a defendant in an attempted sale believed he was selling genuine drugs at the time (see, People v Sessions, supra, at 843).
While the People’s practice of declining to prosecute so-called "beat” drug sale cases constitutes, in this court’s view, a *837 sensible allocation of prosecutorial resources, it is of special concern in this courtroom, where the overwhelming majority of dispositions proceed by way of a Grand Jury waiver and plea to a superior court information. (See, CPL art 195; CPL 200.15.) As such, a defendant who pleads guilty here ordinarily does so not only prior to indictment, but before either he or his attorney has had an opportunity to examine the results of any laboratory analysis of the substance allegedly sold.
By directing the People to produce a laboratory analysis before sentence on each of these Grand Jury waiver cases, the court is assured that a defendant who, as a matter of prosecutorial policy, would otherwise be entitled to an outright dismissal of the sale charge for "lack of a controlled substance,” is not made to suffer the consequences of a felony conviction simply because the dispositive laboratory analysis was not available to him at the time his plea was entered. Thus, in the rare case where the postplea laboratory analysis confirms the lack of any controlled substance in the material sold, the defendant is permitted to withdraw his guilty plea; and, absent other viable charges (e.g., possession of a separate, "positive” stash with the intent to sell under Penal Law § 220.16 [1] or § 220.06 [1]), the case is, on motion of the People, dismissed.
In seeking to be relieved of his plea of guilty, defendant here would have the court extend its policy regarding confirmed "no controlled substance” cases to a prosecution in which the precise nature of the substance sold has not been conclusively established by laboratory analysis. Under the special circumstances of this case, the court declines to do so.
As noted, the court’s policy regarding the presentence filing of a laboratory analysis is intended solely to prevent the unjust treatment of those defendants who, in spite of their otherwise binding admission to having "knowingly” sold a "controlled substance,” are in fact not guilty of that crime (see, People v Cooke, supra). While the presence of a laboratory analysis in the instant case would obviously resolve any lingering questions as to the nature of the substance exchanged by defendant, the court is satisfied, based on its review of the circumstances surrounding the commission of the offense, that the substance sold was a "controlled substance.”
In this regard, the record reflects that the substance passed by defendant to the apprehended buyer in this case was *838 packaged in "telltale” vials which, especially in recent years, have been repeatedly linked to the sale of illegal drugs, in particular, crack cocaine (see, People v Ramos, 168 AD2d 359, 360; People v Goggans, 155 AD2d 689, 690). Further, the swallowing of these vials intact by the apprehended buyer in an effort to avoid her imminent arrest clearly suggests the presence of contraband in the vials. And, perhaps most important, the "stash” vials recovered from defendant’s person following his arrest were subjected to laboratory analysis and were conclusively found to contain cocaine. Taken together, these factors are, in this court’s view, sufficient to support a finding, even without a laboratory analysis of the vials actually exchanged, that the substance sold by defendant in this case was a "controlled substance” (see, People v Boey, supra).
In denying defendant’s motion in this case, the court emphasizes that it does not intend to retreat from its usual practice of requiring a laboratory analysis prior to sentence where a defendant enters a plea of guilty to a superior court information without the benefit of a completed laboratory analysis. Only in the exceptionally rare situation where the People, despite their conscientious efforts, are unable to secure a laboratory analysis of the substance sold, and, where the circumstances surrounding the commission of the offense overwhelmingly support the conclusion that the substance admittedly sold by a defendant was a "controlled substance,” will the court, as here, waive its laboratory analysis requirement and proceed to sentence.