*654 OPINION OF THE COURT
David M. Brockway, J.
The defendant, Jason F., was charged on April 18, 1999 with unlawful possession of marihuana (UPM) in violation of section 221.05 of the Penal Law of the State of New York. In what appears to be a case of first impression in this State, the court is called upon to determine whether the mere testimony of the results of a marihuana field test and the officer’s observations of a substance he identifies as marihuana constitute sufficient evidence to convict under this statute. The court answers this question in the negative. That such a lowly statute (apparently never reviewed in any depth by any court since its passage more than 20 years ago) could involve such lofty issues as are ■herein discussed was frankly surprising to this court. But given the apparent prevalence not only of the drug’s use but the statute’s as well,[1] 23and the serious nature of the drug problem in this State {see, e.g., People v Hollman, 79 NY2d 181, 192), it may well justify such a review.
FACTS
Section 221.05 of the Penal Law reads as follows:
“A person is guilty of unlawful possession of marihuana when he knowingly and unlawfully possesses marihuana.
‘Unlawful possession of marihuana is a violation punishable only by a fine of not more than one hundred dollars. However, where the defendant has previously been convicted of an offense defined in this article[2] or article 220[3] of this chapter, committed within the three years immediately preceding such violation, it. shall be punishable (a) only by a fine of not more than two hundred dollars, if the defendant was previously convicted of one such offense committed during such period, and (b) by a fine of not more than two hundred fifty dollars or a term of imprisonment not in excess of fifteen days or both, if the defendant was previously convicted of two such offenses committed during such period.”
The information charges that “the defendant * * * was found to be in possession of a clear plastic pipe containing marihuana and two clear plastic baggies containing marihuana. A field *655 test was conducted on said marihuana which resulted positive for marihuana”. The defendant pleaded not guilty and trial was held thereon on July 13, 1999.
At trial, the People introduced the testimony of Officer Scott Zelko, who had arrested Mr. F. Officer Zelko testified that at approximately 2:45 a.m., while stopped at State Route 17 and Center Street working “radar” on Route 17, Zelko noticed the defendant walk across Center Street while wearing a long green trench coat. During this time, defendant looked over in the officer’s direction two to three times. After then walking across Route 17, the defendant ducked behind a 4[1]/2-foot-high electrical box located about 30 feet from the officer and, as the officer described it, “peeked” from behind it toward the officer. Upon seeing this, and given the hour, the officer testified that he pulled out from his spot and halted the defendant at Center and Chemung Streets by the Dunkin’ Donuts shop (open 24 hours a day). The officer asked the defendant questions regarding his identity, what he was up to and where he was coming from (Benjamin K.’s house, whom the officer testified was suspected of an attempted house break-in several weeks earlier). The officer further testified that the defendant appeared nervous and that his eyes were glassy and red. Zelko thereupon asked the defendant if he could do a “pat down,” to which the defendant replied in the affirmative. He proceeded to pat the defendant down, finding in the upper left chest pocket of the coat a pipe with what appeared to be marihuana residue in it. The defendant was then placed under arrest, cuffed and advised by the officer that he wished to do a full pat down of the defendant. The defendant thereupon told Zelko that there were two baggies in his coat, which baggies the officer proceeded to take. The officer then testified that at the station he performed a field (Scott Reagent) test on a portion of the material scraped from the pipe and also from each of the two bags seized. The officer, following what he indicated was the protocol for the proper use of the field test, testified that he received “positive” tests on all three items. The officer additionally testified that he was familiar with marihuana both from his training at the Southern Tier Law Enforcement Academy and from courses leading to his two-year degree in criminal justice, in which drug identification was taught. He also testified that he routinely comes across marihuana as a function of his job as a police officer, and that to the date of trial he had been involved in some 30 marihuana arrests this year. The People produced no evidence as to the intrinsic reliability, if any, of the field test used here.
*656 Defense counsel raised objections regarding the initial stop and frisk, the ultimate seizure of the pipe and baggies, and, further, the admissibility of testimony regarding the use and results of the field (Scott Reagent) test.
DISCUSSION
The court finds that the brief, limited stop and the initial request for information were permissible under the circumstances. (See, People v Hollman, supra.) Further, given the hour of the morning, the defendant’s furtive activities, his “nervous” behavior, and the condition of his eyes, the court concludes that the officer’s further inquiry (requesting to pat down the defendant) was, in fact, supported by a founded suspicion that criminality was afoot (supra, at 193).[4] The court finds, too, that defendant’s subsequent turning over of the baggies was also proper in light of Hollman and People v De Bour (40 NY2d 210). But for the reasons set forth below, the court holds that a conviction of this section cannot be had without evidence of “positive” results from either a formal laboratory analysis or, in the alternative, evidence that such results arise from the proper use and certification of a field test that is generally accepted as scientifically reliable under Frye v United States (293 F 1013; see also, People v Wesley, 83 NY2d 417 [1994]). This holding is made despite the fact that the maximum penalty for violating this section where there is no previous drug-related conviction within the prior three years is but a mere $100 fine which is arguably “civil” in nature.[5] It is also made with an awareness of the Legislature’s findings in its passing of the Marihuana Reform Act of 1977 (L 1977, ch 360) which decriminalized possession of small amounts of marihuana (but which, notably, did not remove such possession from its characterization as an “offense” lesser than a “crime” [see, Penal Law § 10.00 (1), (6)]).
A few cases in New York have dealt with the evidentiary value of drug field tests. The New York City Criminal Court, in People v Escalera (143 Misc 2d 779), has held (following *657 substantial documentation from the People) that a marihuana field test (there, the Duquenois-Levine Reagent System) could be used to convert a misdemeanor complaint to an information for purposes of prosecution. That court went on to state, however, that “a finding that the results of the field test are sufficient for the pleading stage does not foreclose the possibility of other challenges at trial” (supra, at 787). Our highest Court has also discussed at least twice recently the so-called Scott Reagent test (also referred to as an NIK test) and its evidentiary role in drug cases. In People v Swamp (84 NY2d 725 [1995]), the Court of Appeals was called upon to determine whether this particular field test was legally sufficient to uphold a Grand Jury indictment involving cocaine.[6] In holding that such a field test does meet the threshold standard for finding a felony indictment, the Court nevertheless distinguished between what passes sufficiency for purposes of indictment and the higher criminal conviction standard of “proof beyond a reasonable doubt.” In fact, the Court wrote (in response to a “warning” from the dissent), “we do not hold that a defendant may be proven guilty beyond a reasonable doubt based solely on the results of a NIK field test” {supra, at 733). In the second case, the Court dealt with the evidentiary sufficiency of this field test in a petition in a juvenile delinquency (JD) proceeding (Matter of Angel A., 92 NY2d 430 [1998]). In Angel, the Court essentially reiterated its findings in Swamp. It once more noted the legal sufficiency of a field test in the bringing of a charge, but held that more than the mere results of such a test (even coupled with an experienced officer’s identification of the drug as in Angel) would be necessary to find guilt, even in a Family Court JD fact-finding hearing. Speaking for the Court, Judge Smith pointed out that, “If, during the fact-finding hearing, the presentment agency chose to rely solely upon the results of a field test and did not seek to admit into evidence the results of a formal laboratory test, then, upon an objection, the accuracy and intrinsic reliability of the field test would have to be established beyond a reasonable doubt and could be subject to attack” {supra, at 435).
In the instant case, the People argue that testimony simply as to the field test results, particularly when coupled with the officer’s drug identification experience and testimony, should nevertheless be sufficient enough to sustain a conviction under this section. Governed as it is by the above court holdings and *658 the reasoning below, the court finds such evidence alone is insufficient for such purposes. Appreciating, however, the People’s argument — especially in light of the limited penalty for its first breach — this court has considered whether or not the Legislature might have envisioned that this offense be somehow subject to a standard of proof less strict than that of “beyond a reasonable doubt.”
In section 221.05’s statutory scheme, if one is “convicted” of any offense defined in article 220 or 221 (including, therefore, a “conviction” of section 221.05 itself), such would constitute a predicate offense for its purposes. A breach of section 221.05 after two prior such findings in three years[7] could ultimately result in an elevated punishment of up to $250 and/or 15 days in jail, the equivalent of that which can be imposed for a “violation” level offense as defined in Penal Law § 10.00 (3).[8] Thus, the fact that the Legislature has stated in the statute itself that “[u]nlawful possession of marihuana is a violation”; that it did not exclude section 221.05 from among those offenses potentially raising a third transgression thereof to Penal Law § 10.00 (3) “violation” status; and that it has coupled section 221.05 (at least by verbal inclusion) with the term “convicted,” all give rise to the fair inference that even in the least serious application of section 221.05, the Legislature has apparently chosen to require the use of that burden of proof which is standard for traffic, violation, misdemeanor and felony cases, namely that of “beyond a reasonable doubt.”
Absent a case in which our courts might find the Scott Reagent (or other field) test as scientifically reliable in and of itself, the court realizes that obtaining convictions in contested section 221.05 cases will likely require substantial prosecutorial resources, expense and energy.[9] Additionally, assuming that time to obtain a full laboratory analysis will be required, the court is not unmindful of speedy trial concerns.[10] However, it is up to the Legislature to either (i) find and allow as *659 presumptively sufficient for conviction a properly administered field test, (ii) change the applicable burden of proof, or (iii) modify the language and characterization of the statute as penal in nature. Failing any of the above, this court foresees yet even further practical difficulty in enforcing this unique section of law.
The defendant is found not guilty.

. As noted below, this court alone, with its village’s population of but some 7,000, has had 37 UPM charges filed with it in just the first half of this year.

. Dealing with marihuana offenses.

. Dealing with controlled substances offenses.

. Notwithstanding what the court notes was the officer’s testimony on cross-examination that he did not then (despite his obvious actions) “suspect criminality”.

. Nóte, for instance, that Penal Law § 221.05 is the only offense in which the Legislature has specifically limited the obtaining of a defendant’s court appearance to the sole method of the appearance ticket. (CPL 150.75 [1].) As a result, this court is not alone in its weekly struggle with whether failures to appear or pay fines for this offense are meant to be exempt from the usual enforcement mechanisms available for all other penal law offenses.

. Apparently the test can be used with respect to other illegal drugs as well.

. Multiple violators of this statute alone will rarely be identified, however (see, CPL 160.10, 160.50, 160.55).

. Convictions for violation-level offenses obviously require proof beyond a reasonable doubt.

. This court alone has entertained some 37 UPM charges in the first half of this year, all as “first offenses” carrying a maximum $100 fine.

. CPL 30.30 (1) (d) requires the People to be ready for trial on a “violation” within 30 days of commencement of the proceeding; unavailability of material evidence for such testing purposes may, however, constitute an “exceptional circumstance” under CPL 30.30 (4) (g), thus excusing at least some delay in bringing such a matter to trial.