Ricky BYERLY, Appellant,

v.

Billy ASHLEY, Warden, Western Kentucky Farm Center, Appellee.

No. 91–CA–572–MR.

Court of Appeals of Kentucky.

Dec. 6, 1991.

Discretionary Review Denied by Supreme Court April 1, 1992.

Ricky Byerly, pro se.

Susan Alley, Corrections Cabinet, Frankfort, for appellee.

Before HOWERTON, STUMBO and WILHOIT, JJ.

WILHOIT, Judge.

This appeal is from an order denying the appellant's "Motion" for a declaratory judgment. The appellant apparently believed KRS 418.005 was applicable. The motion was treated as a complaint or petition, and summons was served on the appellee, who later filed a "response" addressing the merits of the appellant's claim.

■ The appellant claimed in his motion that he, an inmate of the Western Kentucky Farm Center, had been the subject of administrative punishment for the unauthorized use of drugs or alcohol in violation of his rights to equal protection of the law and to due process. He bases this claim on the alleged failure of the prison authorities to establish a proper chain of custody of a urine sample taken from him and tested by a Tennessee laboratory and on the fact that the chairman of the administrative committee adjudging his unauthorized use of drugs or alcohol was the same officer who had released his urine specimen to a laboratory courier. The laboratory report stated that the urine sample contained controlled substances.

Proving a proper chain of custody is not an end in itself. In a case like this it is for the purpose of establishing that the sample tested is the same as that taken from a particular individual and that, at the time it is tested, the sample is in the same condition as when taken, free of tampering. In this case, the chain of custody of the sample was established from the time the sample was taken until it was delivered by correctional authorities to a courier for the laboratory. After that, the record shows that a urine sample was tested at the laboratory and a computer-generated unsigned report was issued to the Farm Center showing that a urine sample tested was that of the appellant and that the test showed the presence of certain drugs.

Apparently, the Corrections Cabinet's own procedures require that everyone handling a urine specimen sign a form which is to "accompany the sample at all times" and is designed to show the time each person receives and releases the specimen. In this case, the form is completed only as far as showing the sample being delivered by a correctional officer to the laboratory courier. No one at the laboratory made an entry on the form indicating who or how many handled the specimen there. The appellee protests somewhat plaintively that the Corrections Cabinet "does not have the authority to require individuals not employed by the Corrections Cabinet to complete forms used by the Corrections Cabinet." That may be so, but, as the appellant points out, the Cabinet certainly has authority not to do business with a laboratory which will not meet its requirements.

In fact the form, which apparently was furnished by the laboratory itself to the Farm Center and which was to accompany any sample sent to the laboratory, had a place on it for the recipient of the sample at the laboratory to sign and to indicate whether or not package and specimen seals were intact when received. This form also has designated places on it for showing the date and time others within the laboratory

receive the specimen. None of this was filled out by the laboratory.

The appellee makes much of the fact that the laboratory report contained statements that "chain of custody procedure was followed for this specimen" and that "integrity checks performed on the sample ... are consistent with an unadulterated urine specimen." Unfortunately, nothing in the record shows precisely what the "chain of custody procedure" was. The record indicates that this perhaps referred to the portion of the laboratory form entitled "Chain of Custody" which was to be filled out by the person collecting the specimen or witnessing its collection. This part of the form showed that an officer took the specimen from the appellant and that the "enclosed specimen was properly sealed with security tape, labeled and placed into the tamper-resistant container with this original chain of custody request." The final report does not indicate what "integrity checks" were made or even that the specimen was still sealed when received for testing.

We would have no problem in this case if the laboratory had filled out its own form to at least indicate who received the sample, that the specimen seal was then intact, and who had handled the specimen through the time it was tested. This is hardly a burdensome procedure, as even the laboratory would seem to agree in light of its own forms. Such a simple procedure would obviate any reasonable probability of tampering from the time the sample leaves correctional authorities until it is received by the laboratory, while at the same time establishing the integrity and identity of the specimen actually tested. As it is, to punish the appellant the authorities have relied on evidence which is less than reliable because it was not established with reasonable certainty that the specimen tested was the same as that taken from the appellant.

Although a prison inmate facing administrative disciplinary proceedings does not have the same procedural safeguards as does a person facing criminal prosecution or even parole revocation, *see Wolff v.*

*McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), fundamental fairness dictates that the evidence relied upon to punish him at least be reliable.

Because of the result which we have reached, it is unnecessary to consider the appellant's second argument.

The order of the trial court is reversed and this matter is remanded for entry of an order consistent with this opinion.

All concur.