This is an appeal from the denial of a petition for writ of habeas corpus. The petitioner, Charles Lee Martin, challenges his 1992 prison disciplinary for violating the prison rule prohibiting consumption of narcotics.
The petitioner alleges that his due process rights were violated because 1) at the hearing, the chain of custody of his urine sample was not proven, 2) he was not provided with the "chain of custody form" prior to or at the disciplinary hearing, 3) the hearing officer was not authorized to administer oaths, 4) the hearing officer was not competent, without the assistance of a judge or psychologist, to determine whether the petitioner was competent to represent himself at the disciplinary hearing, and 5) a requested witness, Lt. Thomas, was not present to testify at the hearing. We consider issues 3), 4), and 5) to be without merit and we reject them without discussion after careful consideration.
 I.
We hold that where an inmate has been charged with the use of a controlled substance in a prison disciplinary action, a proper chain of custody of any urine sample taken for drug testing purposes must be established by either oral and/or documentary evidence where those results are introduced in evidence against the inmate.
The disciplinary report shows that the arresting officer, Hollis George, testified that he had collected a urine specimen from the petitioner "using the proper collection method and chain of evidence procedures. Your urine specimen was given to COI Terry Quarker, a trained operator on the SYVA ETS system drug testing machine." CR. 12. Officer Quarker testified that the specimen tested positive for marijuana. However, the record shows that the appellant asked the following questions: "7. Did you fill out a 'Chain of Custody?' 8. Why one wasn't provided me." CR. 14. The petitioner received the following response:"Inmates are not provided chain of evidence." (Emphasis in original.) CR. 14.
A copy of the Board of Corrections "Institutional Incident Report," signed by Officer George, reflects the following:
 "On Feb. 10, 1992, at approximately 9:30 a.m., COI Hollis George collected a urine sample in the bathroom of the visiting room from inmate Charles Lee Martin, B/112173.
 "The urine specimen was given to COI Terry Quarker, a trained operator on the SYVA ETS system drug testing machine, at approximately 9:54 a.m.
 "At approximately 2:22 p.m. inmate Martin's specimen tested positive for marijuana." CR. 35.
Although this report and the "chain of custody form" are contained in the record, as best this Court can determine, neither were introduced into evidence or read into the record at the disciplinary hearing.
In Alabama, "[t]o meet the due process standard, the disciplinary board's decision must neither be arbitrary nor capricious, and must be based upon some evidence. Thompson v.State, 504 So.2d 747 (Ala.Cr.App. 1987); Superintendent,Massachusetts Correctional Institution, Walpole v. Hill,472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)." Heidelburg v.State, 522 So.2d 337, 339 (Ala.Cr.App. 1988) (emphasis in original).
In deciding that a prison disciplinary committee must make a determination of the credibility and reliability of an unidentified informant before relying on the information provided by that informant, the Eleventh Circuit Federal Court of Appeals noted:
 " '[I]n entrusting to prison officials responsibility for promulgating procedures for arriving at an adequate basis for decision, Wolff [v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.E.2d 935 (1974)] intended a genuine, even if single, factfinding hearing and not a charade.' Helms v. Hewitt, 655 F.2d 487, 502 (3rd Cir. 1981)[, reversed on other grounds, 459 U.S. 460, 103 S.Ct. 864, *Page 386 74 L.Ed.2d 675 (1983)]. Consequently, to make a decision based on the factual evidence presented, part of a disciplinary committee's task must be to make a bona fide evaluation of the credibility and reliability of that evidence. . . .
". . . .
 ". . . [W]e believe that where a committee imposes a sanction as severe as the one here, and where the committee's determination is based upon hearsay information derived from an unidentified informant, minimum due process mandates that the IDC [(Inmate Disciplinary Committee)] undertake in good faith to establish the informant's reliability, at least to its own satisfaction. There must be some information on the record from which a tribunal can reasonably conclude that the IDC undertook such an inquiry and, upon such inquiry, concluded that the informant was reliable. The committee should describe the nature of its inquiry to the extent that the committee is satisfied that such disclosure would not identify an informant.
". . . .
 "The government argues that it is enough for the IDC to know that the informant has a past record of reliability. That knowledge, however, is not on the record here. Both the investigator's report and the confidential report indicated that their sources were considered reliable, but neither one explained why. Indeed, there is nothing in the record to show that the IDC made any inquiry into reliability or that it was furnished with any information explaining the trustworthiness and credibility of the 'reliable sources.' "
Kyle v. Hanberry, 677 F.2d 1386, 1390-91 (11th Cir. 1982). We find these principles applicable here in connection with the necessity of proving a chain of custody in order to ensure the credibility and reliability of a tested urine sample.
Here, the test results were the only evidence presented to convict the accused of consumption of marijuana. "Proving a proper chain of custody is not an end in itself. In a case like this it is for the purpose of establishing that the sample tested is the same as that taken from a particular individual and that, at the time it is tested, the sample is in the same condition as when taken, free of tampering." Byerly v. Ashley,825 S.W.2d 286, 287 (Ky.App.), cert. denied, ___ U.S. ___,113 S.Ct. 364, 121 L.Ed.2d 277 (1992).
 "It should be understood that the species of due process which applies to [prison disciplinary] proceedings, as announced in Wolff v. McDonnell, [418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935
(1974)], is of a limited variety. However, minimum due process is important and must be followed by correctional authorities when applicable. The Wolff
standard certainly does not give a due process carte blanche to correctional officers. Neither does the Wolff minimum due process standard presume the absolute good faith and integrity of all correctional officers at all times under all circumstances. To the contrary, it requires certain procedural minimum and frames them in constitutional terms.
 "Correctional officers are explicitly authorized to take urine samples from inmates. This practice is a necessary one. The manner in which this sensitive process is accomplished must comport with the due process standard defined in Wolff. This court also notes that we are not here dealing with the 'beyond a reasonable doubt' criminal standard defined in Frye v. United States, [293 F. 1013 (D.C. Cir. 1923)].
 "Wolff certainly requires that the handling and processing of such inmate samples be done in such a way as to insure the basic integrity of the system. An inmate has a legitimate liberty interest in this subject matter and has a right to expect minimal due process safeguards to insure that samples are not mishandled by correctional officers. Given the realities of the correctional setting, these procedures must be reasonably definite and must be fully and carefully documented at all stages. Such procedures serve the best interests of the correctional system as well as the limited due process rights of the inmate. *Page 387 
 "Plaintiff asserts that the chain of custody of his urine sample is inadequate since it is not documented. Direct testimony at the trial established [an adequate] chain of custody for plaintiff's urine sample. . . . Those who handled the samples testified that they did not tamper with the plaintiff's sample or any other inmate's sample. . . .
". . . .
 "Plaintiff insinuated that his sample may have been spiked or switched with a positive sample. This court believes otherwise. Plaintiff has introduced no evidence showing that someone had tampered with his urine sample. Also, plaintiff's reaction to taking the November 8, 1984 urine test, and his actions following the taking of the test seem to implicate him in the matter. Based on these reasons and the plaintiff's own credibility, this court holds the handling of plaintiff's urine sample was adequate, and that the disciplinary sanctions imposed upon plaintiff should not be disturbed here.
 "However, this court, or for that matter, any court, does not have the time to hear complaints based on the inadequate chain of custody for prisoner's urine samples. . . . [Court sets out manner in which custody of samples should be maintained.] Furthermore, the minimum due process requirements defined in Wolff v. McDonnell, supra, requires that inmates receive a duplicate copy of the EMIT [Enzyme Multiple Immune Assay Technique] test results from the laboratory which conducted such test."
Wykoff v. Resig, 613 F. Supp. 1504, 1512-14 (N.D.Ind. 1985).
In Bourgeois v. Murphy, 119 Idaho 611, 809 P.2d 472, 482
(1991), it was held that "[t]he Wolff minimum due process standard requires that prison officials document in writing the chain of custody of urine samples taken for drug testing purposes."
 "The critical importance of a written chain of custody should be obvious. If there is no documentation of the chain of custody, an inmate would be severely hampered, if not completely obstructed, in presenting a defense to the disciplinary charges by challenging the test results. Therefore, when there is no documentation of the chain of custody to show that that which was analyzed by the laboratory came from the inmate in question, there is no test from a legal standpoint."
Bourgeois, 809 P.2d at 482. See also Byerly, 825 S.W.2d at 287 ("everyone handling a urine specimen [must] sign a form which is to 'accompany the sample at all times' and is designed to show the time each person receives and releases the specimen"). We do not reach the conclusion that documentary evidence of a chain of custody is essential to satisfy the requirements of due process at a prison disciplinary hearing.
"[T]he law [is] 'clearly established' that minimum due process require[s] a prison disciplinary body to establish a reasonably reliable chain of custody as a foundation for introducing the results of urinalysis tests." Soto v. Lord,693 F. Supp. 8, 19 (S.D.N.Y. 1988). "A proper foundation must be laid where a scientific test result is utilized as the basis for a charge against an inmate. (Matter of Sanchez v. Hoke,116 A.D.2d 965, 966, 498 N.Y.S.2d 535 [(1986)]; Matter of Newman v.Coughlin, 110 A.D.2d 981, 983, 488 N.Y.S.2d 273 [(1985)])." Talv. Scully, 139 Misc.2d 192, 527 N.Y.S.2d 340, 341
(Sup.Ct. 1988). That minimum due process requirement may be established by either oral or documentary evidence of the chain of custody or both. A written document is not essential. SeeWykoff, 613 F. Supp. at 1513-14 where direct testimony was presented to establish the chain of custody for a urine sample. See also Higgs v. Bland, 888 F.2d 443, 449 (6th Cir. 1989) (minimum due process does not always require the production of the lab technician who ran the EMIT test to testify at the inmate's hearing)[1]. *Page 388 
However, a proper chain of custody is not established by a witness's conclusionary statement that the he collected a urine specimen from the petitioner "using the proper collection method and chain of evidence procedures."
"Although a prison inmate facing administrative disciplinary proceedings does not have the same procedural safeguards as does a person facing criminal prosecution or even parole revocation, see Wolff v. McDonnell, 418 U.S. 539,94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), fundamental fairness dictates that the evidence relied upon to punish him at least be reliable."Byerly, 825 S.W.2d at 288.
 "[There] would be no problem in this case if the laboratory had filled out its own form to at least indicate who received the sample, that the specimen seal was then intact, and who had handled the specimen through the time it was tested. . . . Such a simple procedure would obviate any reasonable probability of tampering from the time the sample leaves correctional authorities until it is received by the laboratory, while at the same time establishing the integrity and identity of the specimen actually tested. As it is, to punish the appellant the authorities have relied on evidence which is less than reliable because it was not established with reasonable certainty that the specimen tested was the same as that taken from the appellant."
Byerly, 825 S.W.2d at 288.
We hold that in the context of a prison disciplinary hearing in which the inmate is charged with the consumption of a controlled substance, the disciplinary board must introduce oral and/or documentary evidence of a valid chain of custody of the urine sample where the results of a test on that sample are introduced against the inmate and where the inmate raises some objection to that chain of custody. Without this showing the evidence is inadmissible against the inmate.
Based on the above authority, we hold that the appellant is entitled to a new disciplinary hearing at which there is introduced evidence of a proper chain of custody of his urine sample.
 II.
However, we hold that the petitioner was not entitled to a copy of the "chain of custody form" prior to the disciplinary hearing. "There is no constitutional requirement in Wolff v.McDonnell, supra, that inmates in a disciplinary hearing be given copies of documentary evidence prior to the commencement of the hearing." Fulmer v. Kelley, No. 89-H-0008-N, 1989 WL 241717 at 6 (M.D.Ala. 1989). See Driver v. State, 576 So.2d 675,677-78 (Ala.Cr.App. 1991); Works v. State, 575 So.2d 622, 624
(Ala.Cr.App. 1991). See also Harrison v. Dahm, 911 F.2d 37, 41
(8th Cir. 1990) ("[a]s to the evidence log, in which the chain of custody of the urine specimen was recorded, Harrison was not allowed to view the log as a matter of policy based on the orderly administration of the correctional center"); Newman v.Coughlin, 110 A.D.2d 981, 488 N.Y.S.2d 273, 274 (1985) (petitioner was not "necessarily entitled to copies of the urinalysis test documents before the hearing (see Baxter v.Palmigiano, 425 U.S. 308, 322-323, n. 5, 96 S.Ct. 1551,1559-1560, n. 5, 47 L.Ed.2d 810 [(1976)]").
The record shows that the petitioner did receive a copy of his drug test results.[2] *Page 389 
CR. 31. See Martin v. State, 562 So.2d 294, 296
(Ala.Cr.App. 1990), where this Court stated that "[a]lthough an inmate has no clearly established right to demand production of real evidence at disciplinary proceedings, Young v. Lynch,846 F.2d 960, 963 (4th Cir. 1988), production may be required." (Emphasis in original). See also Mason v. Le Fevre, 115 A.D.2d 922,496 N.Y.S.2d 819, 820 (1985) (where questions concerning chain of custody of urine specimen were relevant, it was error to refuse to call requested witness).
The judgment of the circuit court denying the petition for writ of habeas corpus is reversed. This cause is remanded with directions that the circuit court order the Department of Corrections to set aside the results of the disciplinary hearing held on February 24, 1992, on a charge of "consumption, or use of, or under the influence of alcohol, narcotics, or other intoxicants" and afford the petitioner a new disciplinary hearing.
REVERSED AND REMANDED.
All Judges concur.
[1] If the accused in a disciplinary hearing "introduced evidence that indicated some lapses in the chain-of-custody, 'the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible "property" or "liberty" interest be so comprehensive as to preclude any possibility of error.' Mackeyv. Montrym, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321
(1979) (upholding a statute mandating suspension of a driver's license for refusal to take a breath-analysis test). 'The Due Process Clause simply does not mandate that all governmental decision making comply with standards that assure perfect, error-free determinations.' Id." Higgs v. Bland, 888 F.2d 443,449 (6th Cir. 1989). "Accordingly, if due process does not require error-free determinations in matters affecting the liberty interests of ordinary citizens, then mandating such a level of accuracy would certainly overstate the requirements of due process in the context of prisoner drug-testing." Peranzov. Coughlin, 608 F. Supp. 1504, 1508 (S.D.N.Y. 1985).
[2] We note that the reliability of the Syva company enzyme multiplied immunoassay test (EMIT) for the presence of drugs in urine has repeatedly been found to meet due process standards. See Higgs v. Bland, 888 F.2d 443, 449 (6th Cir. 1989); Spence v.Farrier, 807 F.2d 753, 756 (8th Cir. 1986) and cases cited therein; Bourgeois v. Murphy, 119 Idaho 611, 809 P.2d 472,479-80 (1991), and cases cited therein; Peranzo v. Coughlin,608 F. Supp. 1504 (S.D.N.Y. 1985).