Larry LUCAS, Appellant,

v.

Lt. Larry VOIROL and Larry Chandler, Appellees.

No. 2003–CA–001811–MR.

Court of Appeals of Kentucky.

April 9, 2004.

Case Ordered Published May 21, 2004.

Larry Lucas, Burgin, KY, pro se.

Emily Dennis, Department of Corrections, Office of General Counsel, Frankfort, KY, for appellee.

Before BARBER, KNOPF, and SCHRODER, Judges.

**1.** Ky.App., 825 S.W.2d 286 (1991).

*OPINION*

KNOPF, Judge.

Larry Lucas appeals pro se from an order of the Oldham Circuit Court, entered July 14, 2003, dismissing his petition for review of a disciplinary ruling by officials of the Luther Luckett Correction Complex in LaGrange. The trial court ruled that Lucas's punishment for using marijuana in violation of prison regulations was justified by evidence of a positive drug test. The court further ruled that Lucas's petition challenging that result was frivolous. Lucas contests both of these rulings. He contends that prison officials failed to establish a chain of custody for the drug-test evidence as required by *Byerly v. Ashley*,[1] and that even if it be determined that the drug-test evidence is admissible his petition was sufficiently meritorious not to be characterized as frivolous. Although we agree with the trial court that the chain of custody permitted reliance on the drug test, we do not agree that Lucas's petition was frivolous. Accordingly, we affirm in part, reverse in part, and remand for entry of an amended order.

On December 11, 2002, corrections officer Faulkner collected a urine sample from Lucas in accordance with prison regulations mandating random drug tests. Faulkner testified that he collected the sample in compliance with pertinent rules, including those requiring the inmate to wash his hands prior to giving the sample. The rules require the collecting officer to initiate a chain of custody for the sample.[2] Accordingly, Officer Faulkner prepared the form the Department of Corrections has adopted for that purpose.

The form, which was made a part of the administrative record, identifies Lucas by

**2.** KCPP 15.8 § VI(3).

name and number and states where and when Faulkner collected the sample. The form purports to include Lucas's signature certifying that he gave the sample and that the sample was sealed and labeled in his presence. The form provides that officer Hans witnessed the sampling and states that Faulkner released the sample to a delivery service, Air Borne Courier, for shipment to a testing facility. Finally, the form was signed by the person who received the sample at the lab, Advanced Toxicology Network (ATN) of Memphis, Tennessee, and indicates that the sample arrived on December 16, 2002, with the seal intact. Attached to the form was a complete chain of custody by everyone who handled the sample at the lab and the test results, which indicate that the sample had twice tested positive for marijuana.

 As the parties note, the guarantee of fundamental fairness implicit in the due process clauses of the state and federal constitutions require that an inmate not be subjected to disciplinary sanctions unless there is some reliable evidence that he has committed an infraction justifying the sanction.[3] In *Byerly v. Ashley,*[4] this Court held that drug tests do not satisfy the "some evidence" standard absent chain-of-custody proof establishing the likelihood that the correct sample was tested and that it was not adulterated.

Relying on *Byerly,* Lucas attacks what he contends are numerous flaws in the chain of custody of his sample. We agree with the trial court that most of these contentions are without merit. The chain of custody provided by ATN was sufficient. It indicates clearly enough that Lucas's sample arrived intact at the lab and it accounts for each person who handled the sample during testing. The technical

flaws Lucas alleges—minor ambiguities in the form, a signature not clearly legible—do not undermine the inference the form permits that it is highly likely that the proper, unadulterated sample was accurately tested.

The weak link in the chain of custody is the one connecting the officer who collects the sample with the accessing agent at the lab. The chain-of-custody form indicates that the collecting officer gave the sample to a courier who is presumed to have delivered it to that agent. Apparently, however, this is a simplification of what happened. In fact, according to the Department, the collecting officer placed the sample into a locked storage box, where it remained until the courier came. Who removed the sample from storage does not appear on the form, although the Department suggests it was the courier. Nor does the form indicate when the sample was removed. Ideally, perhaps, these details would be reflected on the form. Their absence, however, does not undermine confidence in the test where lab personnel certify that the sample arrived within a reasonable time after collection, clearly identified, and with its seal intact. We agree with the trial court therefore that the drug test results were admissible against Lucas and provide sufficient evidence of an infraction to justify his punishment.

Lucas claims that there were other defects in the sample-collecting procedure, but these claims are also unavailing. He claims that he did not wash his hands prior to giving the sample, as the regulations require, and he denies having signed the chain-of-custody form acknowledging the sample as his. Officer Faulkner testified to the contrary, however, and we cannot

---

**3.** *Smith v. O'Dea,* Ky.App., 939 S.W.2d 353 (1997).

**4.** *supra.*

say that the disciplinary tribunal clearly erred by relying on the officer's testimony.

█ Accordingly, we affirm the Oldham Circuit Court's July 14, 2003, ruling upholding Lucas's punishment for the drug infraction. We believe, however, that the courier gap in the chain of custody gave Lucas a legitimate ground for attacking the evidence. His petition, therefore, should not have been deemed frivolous. We reverse the trial court's ruling to that effect and remand for entry of a suitably amended order. Henceforth, however, now that we have held that the courier gap is harmless, that gap will not provide a ground for challenging the sufficiency of drug-test evidence. Future petitions based upon that gap may be deemed frivolous.

ALL CONCUR.