RENDERED: MARCH 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0407-MR

JEREMY CAVINS                                                                         APPELLANT

APPEAL FROM BOYLE CIRCUIT COURT
v.        HONORABLE DARREN WAYNE PECKLER, JUDGE
ACTION NO. 24-CI-00320

LT. HANNAH MURPHY; CHRISTINA
COLEMAN, ADJUSTMENT
COMMITTEE MEMBER; COOKIE
CREWS, COMMISSIONER; KEVIN
MAZZA, WARDEN; AND ZACHARY
STEELE, CORRECTIONS OFFICER                                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE: Appellant, Jeremy Cavins, an inmate at the Bell County

Forestry Camp ("Inmate Cavins"), appeals from an order of the Boyle Circuit

Court denying his petition for declaratory judgment. The appellees are employees

of the Kentucky Department of Corrections and are collectively referred to as "DOC."

After Inmate Cavins was found guilty by the prison adjustment committee of unauthorized use of drugs or intoxicants, he filed the underlying declaration of rights action, alleging that the committee violated his due process rights by relying on a urine sample that had not been documented according to DOC policy.[1]  The circuit court dismissed the petition, concluding that no due process violation occurred.  Having reviewed the briefs, the record, and the applicable law, we affirm.

## I. BACKGROUND

On or about April 22, 2024, Officers Keith Martin and Gregory Noel collected a urine sample from Inmate Cavins.  The sample was sent to Premier Biotech Labs for further testing.  On April 25, 2024, Captain John Lewis received the urinalysis results, which showed that Inmate Cavins's urine sample tested

---

[1] As explained later, although both the collecting DOC employee and Inmate Cavins signed the chain-of-custody form when the urine sample was placed in a sealed container, the name of the transporting courier was not included on the form.  The testing laboratory, however, documented that the sample arrived intact with the seal unbroken.

positive for the presence of Fentanyl,[2] Norfentanyl,[3] and Cotinine.[4] After confirming that Inmate Cavins was not on any prescription medications that would produce these results, a formal disciplinary write-up was issued to him.

An official investigation followed. During the investigation, Inmate Cavins refused to answer whether he had taken any substances that might have resulted in a positive urinalysis result for the substances included in the write-up. He did, however, assert that he was "not guilty," reserved his right to be present at any adjustment committee hearing, and requested that he be provided with the required notice at least 24 hours prior to any hearing. At the conclusion of the investigation, Inmate Cavins was charged with the unauthorized use of drugs or intoxicants and provided a copy of the report which notified him of the disciplinary charge, advised that he had the right to call witnesses at his formal adjustment

---

[2] Fentanyl is a synthetic, lipophilic opioid agonist with analgesic and anesthetic properties. It is approved by the Food & Drug Administration for the treatment of severe pain and is legally available only through a prescription. https://www.deadiversion.usdoj.gov/drug_chem_info/fentanyl.pdf (last visited Feb. 4, 2026).

[3] Norfentanyl is the primary inactive metabolite and a major decomposition product fentanyl, commonly used as a biomarker to detect fentanyl use in toxicology screenings. The presence of norfentanyl in urine suggests that fentanyl has been ingested in the past. https://www.mayocliniclabs.com/test-catalog/drug-book/specific-drug-groups/fentanyl (last visited Feb. 4, 2026).

[4] Cotinine is chemical the body makes after exposure to nicotine. While nicotine disappears from the system within a few hours, cotinine remains for a day or more after nicotine consumption. https://www.urmc.rochester.edu/encyclopedia/content?contenttypeid=167&contentid=nicotine_cotinine (last visited Feb. 4, 2026).

hearing, and that it was his responsibility to make arrangements for those witnesses.

Inmate Cavins's adjustment hearing was held May 28, 2024. During the hearing, the committee received Captain Lewis's report and evidence collected during the investigation, which included information from the urinalysis and the confirmation that Inmate Cavins was not on any medication that would create a positive for the substances for which his urine tested positive. The committee ultimately found Inmate Cavins guilty of the offense of unauthorized use of drugs or Intoxicants and assessed a penalty of 60 days of good time forfeiture and restitution in the amount of $22.90, the cost of testing.

Inmate Cavins appealed the adjustment committee's determination to the Warden, challenging the sufficiency of the chain of custody. As part of his appeal, Inmate Cavins alleged that the agency or individual who transported his urine sample from the prison to the lab for testing was not documented, in violation of CPP[5] 15.8.[6] The Warden reduced Cavins's good time forfeiture to 30 days but otherwise affirmed.

---

[5] Department of Corrections Policies and Procedures.

[6] CPP 15.8(II)(C)1. states that "[a]n institution that uses any outside delivery agent to deliver a urine sample to the laboratory shall ensure that the sample is released to the delivery agent by signature of staff packaging the sample."

Thereafter, on September 9, 2024, Inmate Cavins filed the underlying petition for a declaration of rights pursuant to KRS[7] 418.040 with the Boyle Circuit Court. DOC filed a response and motion to dismiss, arguing that Inmate Cavins was afforded due process and sufficient evidence supported the committee's finding of guilt. Following Inmate Cavins's response objecting, the court granted DOC's motion and dismissed Inmate Cavins's petition.

This appeal followed.

## II. STANDARD OF REVIEW

"[P]rison disciplinary proceedings are not criminal prosecutions; and punishment is imposed as warranted by the severity of the offense in order to correct and control inmate behavior within the prison." *Conover v. Lawless*, 540 S.W.3d 766, 768 (Ky. 2017) (quoting *Ramirez v. Nietzel*, 424 S.W.3d 911, 916 (Ky. 2014)). Prison administrators are better suited than the courts to make that determination. Accordingly, the standard of review in prison disciplinary proceedings is highly deferential to prison administrators. *Smith v. O'Dea*, 939 S.W.2d 353, 357 (Ky. App. 1997). "The court seeks not to form its own judgment, but, with due deference, to ensure that the agency's judgment comports with the legal restrictions applicable to it." *Id.* at 355; *Foley v. Haney*, 345 S.W.3d 861, 863 (Ky. App. 2011). When there is some evidence to support the prison

---

[7] Kentucky Revised Statutes.

-5-

administrators' decision, we will not interfere with the disciplinary proceedings.

*Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 457, 105 S. Ct. 2768, 2775, 86 L. Ed. 2d 356 (1985).

### III. ANALYSIS

When an actual controversy exists, a plaintiff may obtain a binding declaration of rights from a court of general jurisdiction. KRS 418.040. Declaratory judgment actions allow review of an inmate's dispute with DOC whenever, like the case at bar, *habeas corpus* proceedings are inappropriate. *Smith*, 939 S.W.2d at 355. Although declaratory judgment petitions are original actions, they are akin to appeals because the actions invoke the circuit court's authority to act as a court of review. *Id.*

Although DOC filed a motion to dismiss in response to Inmate Cavins's petition, rather than a motion for summary judgment, this Court has held that summary judgment standards and procedures are most appropriate in these cases. *See id*. at 355 n.1. Summary judgment for DOC "is proper if and only if the inmate's petition and any supporting materials, construed in light of the entire agency record . . . , does not raise specific, genuine issues of material fact sufficient to overcome the presumption of agency propriety, and [DOC] is entitled to judgment as a matter of law." *Id*. at 356.

Due process under the federal and Kentucky constitutions is implicated in prison disciplinary proceedings when, as in this case, the prisoner's good-time credit is at stake. *Smith*, 939 S.W.2d at 357. In the context of prison disciplinary proceedings, however, the prison is only required to afford the prisoner "minimal due process"; it does not have to afford the full panoply of rights due in a formal criminal prosecution by the State. *See Ramirez*, 424 S.W.3d at 916 (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-57, 94 S. Ct. 2963, 2974-75, 41 L. Ed. 2d 935 (1974)). To satisfy the minimal due process requirement, the prison must provide: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [the inmate's] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454, 105 S.Ct. at 2773 (citing *Wolff*, 418 U.S. 563-67, 94 S. Ct. at 2978-80). Additionally, an inmate has a limited right to present exculpatory evidence. *Ramirez*, 424 S.W.3d at 919.

Inmate Cavins first argues that the circuit court erred in concluding that his guilt was supported by sufficient evidence due to critical flaws in the chain of custody of the urinalysis. He acknowledges that, as a prison disciplinary proceeding, the adjustment committee's finding of guilt need only be supported by some evidence in the record. *Id*. at 357. But he argues that even this low standard

was not met due to the break in the chain of custody that rendered the evidence unreliable.  Cavins cites *Byerly v. Ashley*, 825 S.W.2d 286 (Ky. App. 1991), in support.

In *Byerly*, the Court held that fundamental fairness dictates that the evidence relied upon to punish an inmate in a prison disciplinary proceeding must at least be reliable.  *Id.* at 288.  The Court then determined that the urinalysis supporting the adjustment committee's finding of Byerly's guilt for unauthorized use of drugs or intoxicants was not reliable because the chain of custody was incomplete.  *Id.*  Specifically, although DOC had documented a complete chain of custody from the time Byerly's urine sample was taken until it was delivered to the laboratory courier, the laboratory failed to document who received the sample or whether the specimen seals remained intact.  *Id*. at 287-88.  In holding that Byerly's due process rights were violated, the Court rejected DOC's contention that the reliability of the urinalysis was established by statements in the laboratory's final report that chain of custody procedures were followed, because nothing in the record defined those procedures.  *Id*.

*Byerly* is distinguishable from the case at bar.  Herein, correctional officers collected the urine sample from Inmate Cavins and documented the details of the event on a form supplied by Premier BioTech Labs (hereinafter "Premier Labs"), which tested the sample.  The form contains a space for the collecting

-8-

officer to identify the courier of the sample from the prison to the lab, required, but this information was omitted. Both Cavins and the collecting officer signed the form certifying that the urine sample was sealed with a tamper evident seal, and a second officer signed as a witness. At the bottom of the form, unlike in *Byerly*, an accessing technician at Premier Labs marked that the sample was received in an acceptable condition, and acceptable is defined in the lab's final report as including that the seal remained intact.[8]

The facts here are more akin to those in *Lucas v. Voirol*, 136 S.W.3d 477 (Ky. App. 2004). Like Inmate Cavins, Lucas argued that an incomplete chain of custody on a urinalysis invalidated the adjustment committee's finding of guilt. *Id.* The Court acknowledged that the link in the chain of custody related to the transportation of Lucas's urine sample from the prison to the lab was weak, because, although the courier was identified, the identity of who retrieved the sample from storage for the courier and when this occurred was not documented. *Id.* at 479. Despite this flaw, the Court held that the evidence was nevertheless reliable, because the lab had documented that the sample was received with the seal intact.

---

[8] Specifically, the final report states that "[a]ll specimens tested must be determined to be acceptable in accordance with Premier [Labs'] specimen handling procedures upon receipt at the laboratory; *this includes the specimen seal being intact*. Any specimen determined to be unacceptable will be rejected and no testing will be performed." (Emphasis added.)

The law does not require a perfect chain of custody. *Webb v. Sharp*, 223 S.W.3d 113, 119 (Ky. 2007). It simply requires "persuasive evidence that the reasonable probability is that the evidence has not been altered in any material respect." *Rabovsky v. Commonwealth*, 973 S.W.2d 6, 8 (Ky. 1998) (internal quotation marks omitted). Importantly, "'[c]hain of custody' is not an end in itself, but a term of art describing a means of proving an object's authenticity." *Thomas v. Commonwealth*, 153 S.W.3d 772, 781 (Ky. 2004). So long as the proponent is able to demonstrate a reasonable probability that it has not been altered in any material respect, "[a]ny gaps go to the weight, rather than the admissibility of the evidence." *Id.*

In assessing whether the proponent has met the threshold showing, the most relevant factors are the circumstances surrounding the preservation of the evidence and the likelihood of tampering by intermeddlers. *Pendland v. Commonwealth*, 463 S.W.2d 130, 133 (Ky. 1971). Here, despite the flaw in the chain of custody, the certification that the specimen remained sealed after transport establishes with reasonable probability that the specimen tested by Premier Labs was the same, unaltered sample taken from Inmate Cavins. In other words, the fact that sample arrived at the lab in a sealed, labeled container suggests that the sample was properly preserved during transport and had not been tampered with. Thus, even though the courier was not documented as it should have been, the admission

-10-

of the evidence was proper and the adjustment committee properly relied on it. *Parson v. Commonwealth*, 144 S.W.3d 775, 781-82 (Ky. 2004) (holding that Commonwealth sufficiently established that the blood and urine samples at issue were the unaltered samples taken from the appellant even though the individuals who collected and transported the samples did not testify).

Thus, having reviewed the record, we agree with the circuit court that the committee's finding of guilt was supported by some evidence of guilt, and Inmate Cavins was afforded due process. Our conclusion is unaltered by the fact that DOC's failure to identify the courier violated CPP 15.8, because a prison official's failure to comply with prison regulations is not a *per se* denial of due process. *White v. Boards-Bey*, 426 S.W.3d 569, 575 (Ky. 2014). Accordingly, the circuit court did not err in dismissing Inmate Cavins's petition for a declaration of rights.

Inmate Cavins's second claim is that he was denied due process because he was not present at the adjustment hearing and the record does not contain a waiver of appearance. Inmate Cavins, however, did not raise the issue in his appeal to the Warden, and, as DOC correctly states, "[t]he failure to raise an issue before an administrative body precludes a litigant from asserting that issue in an action for judicial review of the agency's action." *O'Dea v. Clark*, 883 S.W.2d

888, 892 (Ky. App. 1994).  For this reason, we will not address the merits of this argument on appeal.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Boyle Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEF FOR APPELLANT:

Jeremy Cavins, *pro se*
Pineville, Kentucky

BRIEF FOR APPELLEES:

Angela T. Dunham
Frankfort, Kentucky