OPINION OF THE COURT
Michael A. Gary, J.
Defendant is charged with criminal sale of marihuana in the fourth degree (Penal Law § 221.40), unlawful possession of marihuana (Penal Law § 221.05) and criminal possession of a hypodermic instrument (Penal Law § 220.45). The complaint alleges that defendant sold a bag of marihuana for $10 to an undercover police officer, and once arrested he was found to possess four more bags of marihuana and one hypodermic instrument.
At arraignment, in order to convert the complaint into an information, the People filed with the court a long-form supporting deposition, containing a series of paragraphs with boxes to check where applicable — a format approved in People *780 v Hohmeyer (70 NY2d 41 [1987]), and in compliance with CPL 100.30. Insofar as relevant, the first page of the properly executed form contains a paragraph in which the undercover officer corroborates the contents of the complaint, and adds that he gave the recovered substances to another officer, Police Officer John Rodelli, for "field testing”. The second page of the supporting deposition contains two paragraphs in which Police Officer John Rodelli states that he tested both the substances purchased from the defendant and the substances recovered incident to his arrest. The last part of the two paragraphs reads as follows: "I used a Duquenois-Levine Reagent System field test and carefully followed the directions on the kit. (I have received special training in the identification of marijuana, including field testing procedures.) The substance, which had the color, texture, and distinctive odor of marijuana, field tested positive for marijuana.” This was signed under a jurat by Police Officer Rodelli.
Upon filing, the People requested that the court declare the complaint had thereby been converted to an information. (No laboratory report is required to prove possession of a hypodermic instrument. [People v Strong, 42 NY2d 868 (1977).]) Defense counsel objected on the ground that conversion could only be accomplished by the filing with the court of a standard police laboratory report showing the presence of marihuana. The court reserved decision for a formal motion addressing the issue presented: whether for a charge of possession or sale of marihuana the affirmative opinion of a police witness who has received special training in the identification of marihuana coupled with a positive test result yielded by that same witness who has performed a chemical field test on the recovered substance is sufficient to convert a complaint into an information.
An information must contain nonhearsay, factual allegations sufficient to establish a prima facie case as to each charge in the complaint. (People v Alejandro, 70 NY2d 133, 137-139 [1987]; see, CPL 100.40 [1] [c]; 100.15 [3].) A prima facie case is that quantum of competent and admissible evidence such that, if unexplained and uncontradicted, would warrant a conviction. (People v Harvin, 126 Misc 2d 775 [1984].)
In the only Court of Appeals decision addressing the issue of expert testimony as to the identity of marihuana, the alleged marihuana itself was not available for testing. The defendant’s conviction for sale of marihuana was reversed because *781 it rested on the testimony of a witness who identified it on the basis of his two or three isolated experiences taking the drug. (People v Kenny, 30 NY2d 154, 157 [1972].) Since a witness who testifies to the identification of a drug is essentially an expert witness, the Kenny court rejected this witness’ qualifications as a basis for his opinion. More recent Appellate Division decisions and those of courts of other jurisdictions clearly establish that a drug user can qualify as an expert witness in the identification of a drug not produced as evidence in court. (People v Lynch, 85 AD2d 126 [4th Dept 1982] [buyers testified defendant sold them marihuana and phencyclidine]; People v Jewsbury, 115 AD2d 341 [4th Dept 1985] [indictment sustained where accomplice buyer testified in Grand Jury that what defendant sold him was cocaine; corroboration consisted of taped conversations but no drugs were recovered]; see generally, Annotation, 95 ALR3d 978.) In Jewsbury (supra, at 343), the Appellate Division described the test laid down in Lynch for a drug user to qualify as an expert witness: "drug users who speak from experience and observation with drugs can identify drugs in court. If users can demonstrate a knowledge of the narcotic, they are competent to testify. The weight to be given the testimony is for the jury to determine.”
As noted earlier, an information must contain nonhearsay factual allegations sufficient to establish a prima facie case. This is exactly the same standard of proof necessary to support an indictment. (People v Alejandro, supra, at 138; see, CPL 190.65 [1] [a].) Accordingly, since a drug user’s expert testimony on the identification of a controlled substance is sufficient to support an indictment for the sale of cocaine (People v Jewsbury, supra), it can be logically inferred that, given the same standard of proof, an expert drug user’s supporting deposition could convert a complaint for criminal sale of marihuana into an information. In similar fashion, it would seem that a supporting deposition from a police officer specifically trained in the identification of marihuana would have the same effect.
Nonetheless, most lower courts which have considered the need for expert evidence in marihuana cases have held that a laboratory report must be filed to convert a complaint into an information. (People v Harvin, supra; People v Ranieri, 127 Misc 2d 132 [1985]; People v Blow, 127 Misc 2d 1054 [1985]; People v McGriff, 139 Misc 2d 361 [1988]; contra, People v Hernandez, 124 Misc 2d 376 [1984]; People v McMillan, 125 *782 Misc 2d 177 [1984] [dicta]; People v Paul, 133 Misc 2d 234 [1986] [dicta].) Their rationale is, notwithstanding the police officers’ averments in the complaints, that what they recovered is marihuana, a significant percentage of laboratory reports subsequently filed with the court do not support the officers’ allegations. (See, People v McGriff, supra, at 364.)
While it may seem anomalous that a drug user’s expertise can convert a complaint for sale of marihuana into an information while a police officer’s may not, the anomaly is easily resolved by an examination of the facts of the previously cited cases. Where a drug user is allowed to give expert testimony concerning the identification of a drug, the basis of the expertise is the witness’ actual use of the drug in question on numerous occasions and his experience concerning its repeated, similar effects on his person. (People v Lynch, supra, at 127, and cases cited therein; see also, Annotation, 95 ALR3d 978.) In contrast, the common thread of those cases which have held a lab report is necessary for conversion is that the basis for the police officer’s opinion is an extremely limited examination of the recovered substance and, therefore, cannot qualify as expert opinion. (See, People v Kenny, supra.) As succinctly stated in McGriff (supra, at 364): "A police officer is simply not in a position to provide the factual predicate required for an information by his mere observation that a substance is marihuana.”
Applying McGriff’s holding to the case at bar, it is obvious that Police Officer Rodelli did far more than conduct a visual observation of a material in a plastic bag. According to his sworn deposition, he removed the alleged marihuana from the bag, observed its color, felt its texture and smelled its odor. As a police officer with special training in the identification of marihuana, whether Police Officer Rodelli’s opinion, based on his actual handling of the alleged marihuana, that the substance he examined had the color, texture and distinctive odor of marihuana is sufficient, standing alone, to convert the complaint for sale and possession of marihuana into an information need not be decided by this court. (But see, People v Hernandez, supra, and cases on the "singular aroma of marijuana”; People v Barnes, 149 AD2d 359, 360 [1st Dept 1989]; see also, Annotation, 5 ALR4th 681.) This is because the People also rely upon the results of the modified Duquenois-Levine Reagent System field test administered by the officer.
*783 DUQUENOIS-LEVINE TEST
In the documentation submitted by the People in support of their motion,[1] the Duquenois-Levine test is described as an extremely reliable test for the presence of marihuana, developed in 1937, modified in 1962 and currently in wide use in forensic laboratories. The particular test kit used by Police Officer Rodelli has been purchased by law enforcement agencies in nearly every State as well as the United States Armed Forces.
The operation of the test kit is as follows: "The test kit contains three ampoules: (i) denatured alcohol, U.S.P. distilled water, vanillin, and acetaldehyde; (ii) hydrochloric acid; and (iii) chloroform. The tester introduces four or five small strands of marijuana into the pouch, reseals it, breaks the left ampoule, and agitates for one minute. This ampoule is a solvent that extracts the cannabinoids, if any, from the sample; a faint light green or tan color will appear if cannabinoids are present. The second ampoule is then broken generally producing a light flesh green which quickly gives way to a purple color; the color gradually increases in intensity. The third ampoule is then broken, and the tester taps the pouch two or three times. If cannabinoids are present, the lower level (the chloroform level) of the resultant solution will be purple.” This test was also described by the authors in the treatise Scientific Evidence in Criminal Cases, by Moenssens, Moses and Inbau (§ 6.29 [1973]). "Chemically the Duquenois test is the principal test for tetrahydrocannabinol, the hallucinogenic constituent of marijuana. The test procedure involves the application of Duquenois’ reagent to an extract of the sample, or directly to the sample * * * if the treated reagent is placed with chloroform and the purple coloration is absorbed into the chloroform, most chemists can state with certainty that marijuana is present.”
It is asserted that the principal shortcoming of the modified Duquenois-Levine test is that it can give "false negatives”— *784 i.e., instances where the test gives a negative result but the substance is, in fact, marihuana. The test can give "false negatives” if the substance is very wet, green, or old. However, it is the policy of the New York City Police Department to void the arrest in any case in which the field test is negative.
Henry Mills, supervisor of drug identification for the Division of Forensic Science, Georgia Bureau of Investigation, asserts that in his 19 years of laboratory experience he has "not found a 'false positive’ — i.e., an instance where a substance was positive on the modified Duquenois-Levine color test but 'negative’ for marijuana after a microscopic examination.” Susan Hart Johns, research and development program administrator for the Illinois State Police, claims a similar experience: in more than 2,000 laboratory tests, she did not have a "false positive (purple in the lower chloroform layer) when using the modified Duquenois-Levine test on leafy plant material.” And a test conducted by the New York City Police Department as part of its officer training program was apparently to the same effect: in every 1 of 25 instances (19 nonmarihuana substances and 6 marihuana samples), the field test gave the correct result. The 19 nonmarihuana substances were: (1) Tetley orange pekoe tea; (2) black pepper; (3) nutmeg; (4) Japanese green tea; (5) oregano; (6) jasmine tea; (7) thyme; (8) sweet basil; (9) chives; (10) parsley flakes; (11) paprika; (12) Maxwell House coffee; (13) tarragon; (14) Marlboro Lights tobacco; (15) longjing tea; (16) spider plant leaves; (17) Sanka; (18) Kam Wo tea, and (19) Sleepy Time tea.
Finally, the People point to a 1976 study by the Mid-Atlantic Regional Laboratory of the Drug Enforcement Administration, U. S. Department of Justice,[2] which found the modified Duquenois-Levine test highly selective for marihuana and concluded that if the test is properly performed the "possibility of a false positive becomes negligible.” (At 97.)[3]
*785 The efficacy of the test itself, however, is not in question; the narrow question before this court is whether the complaint has been converted into an information. While a number of courts have held that conversion requires a police laboratory report (see, discussion supra), those decisions were rendered at a time before the New York City Police Department utilized the Duquenois-Levine field test. Moreover, even in People v Ranieri (supra, at 133) the court’s reasoning was that conversion required some "supportive scientific proof.” This court can find no case law nor logic that says the People are limited to one specific method to prove an element of the crime. Unquestionably, the People may prove the identity of marihuana at trial by expert testimony and scientific testing. (People v "R ”, 36 AD2d 546 [3d Dept 1971]; see also, Annotation, 75 ALR3d 717.)
As to the issue of the reliability of the Duquenois-Levine test, the reasoning of the Court of Appeals in People v Middleton (54 NY2d 42 [1981]) is instructive. There, the trial court held bite mark evidence as a means of identification generally reliable and admitted it without a hearing concerning the scientific principles involved. Defendant argued that the evidence should have been excluded because it was not sufficiently accepted by the scientific community. The Court of Appeals held "the test is not whether a particular procedure is unanimously indorsed by the scientific community, but whether it is generally accepted] as reliable.” (People v Middleton, supra, at 49.) The court noted that the techniques *786 employed for taking bite mark evidence were accepted and approved by the majority of experts in the field and the reliability of the procedures had been accepted by all of the appellate courts that had addressed the issue. (People v Middleton, supra, at 50.)
In this case, the People’s affidavits and submissions represent ample proof that the Duquenois-Levine test is generally accepted as reliable by experts in the field, including those in the Federal Government. This court’s own research has also found confirmatory reports of the test’s reliability. (See, Fochtman Winek, A Note on the Duquenois-Levine Test for Marijuana, 4 Clinical Toxicology 287 [1971]; Moenssens, Moses and Inbau, Scientific Evidence in Criminal Cases, op. cit.) Defendant has not cited any contrary findings. Moreover, appellate courts from other jurisdicitions have affirmed the reliability of such field test procedures as sufficient to prove the identity of marihuana at trial. (State v Hill, 638 SW3d 827 [Tenn Crim App 1982]; accord, State v Sadusky, 54 Ohio Misc 49, 376 NE2d 1363 [Akron Mun Ct 1977]; State v Shoultz, 564 P2d 257 [Okla Crim App 1977]; Matter of Smith, Ohio Ct App, Mar. 31, 1982, docket No. 9-81-34.)
Accordingly, this court determines, based upon the reasoning in Middleton (supra), the Duquenois-Levine test is sufficiently reliable for purposes of converting the complaint into an information, without the necessity of a hearing. Obviously, at trial the People would still need to lay the proper foundation for the admissibility of the test results. (See, People v Middleton, supra, at 50-51.)
CONCLUSION
This court holds that, if uncontraverted and uncontradicted, the proof of the police officer acting in an undercover capacity that he purchased marihuana from the defendant for $10; and the proof of a second police officer who arrested defendant that the officer found four more bags of marihuana on the defendant’s person; and the proof of a third police officer trained in the identification of marihuana that he examined the substances obtained by his colleagues and that they had the color, texture and distinctive odor of marihuana and that all the substances field tested positive for marihuana using the Duquenois-Levine Reagent System field test, constitutes that quantum of competent and admissible evidence that would warrant a conviction of defendant for possession and *787 sale of marihuana. Therefore, the filing with the court of a supporting deposition by a police officer trained in the identification of marihuana in which the witness avers that the substance he examined had the color, texture and distinctive odor of marihuana, coupled with a representation that the substance tested positive for marihuana upon application of the Duquenois-Levine Reagent System field test, is sufficient "supportive scientific proof’ to convert this complaint alleging possession and sale of marihuana into an information.
The portable nature of this "police laboratory” does not lessen its reliability. Indeed, this court sees no difference between the supporting deposition filed here and that of a police officer trained in the use of a breathalyzer whose supporting deposition lists the results of the test administered to the driver and converts the complaint’s charge of driving while intoxicated (Vehicle and Traffic Law § 1192 [2]) into an information. (People v Richberg, 125 Misc 2d 975 [1984].)
Similarly, a finding that the results of the field test are sufficient for the pleading stage does not foreclose the possibility of other challenges at trial. Accordingly, the People are directed to provide to defendant full discovery as to all aspects of the Duquenois-Levine Reagent System field test kit.
The defendant’s motion to suppress the physical evidence recovered is granted to the extent that a Mapp hearing is ordered as to the bags and hypodermic instrument allegedly found on defendant’s person at the time of his arrest.

. This appendix includes (A) a letter from Joseph Flaherty, national manager of sales and marketing for Public Safety Products, manufacturer of the field test kit at issue here; (B) an affidavit from Terry Mills, supervisor of drug identification for the Division of Forensic Science, Georgia Bureau of Investigation; (C) an affidavit from Susan Hart Johns, research and development program administrator for the Illinois State Police; (D) an affidavit from Alfred James, executive officer, Narcotics Division, New York City Police Department; and (E) an affidavit from Sgt. Daniel Oates, training coordinator, Narcotics Division, New York City Police Department.

. Hughes and Warner, A Study of "False Positives” in the Chemical Identification of Marijuana — Drug Enforcement Administration Laboratory Notes, Microgram Vol. IX, No. 7 (July 1976).

. The Drug Enforcement Administration tested the following plant substances: mace; nutmeg; Eight O’Clock coffee; Red Circle coffee; Bokar coffee; caraway; cardamom; ginger; cloves; thyme; agrimony; henna; current; sandalwood; betony; eucalyptus and A&P tea. It found that three brands of coffee — 8 O’Clock coffee, Red Circle coffee and Bokar coffee — could give false positives (1976 Study of Mid-Atlantic Regional Laboratory of Drug Enforcement Administration, US Dept Justice, table 2). These substances differ so *785 markedly from marihuana in their gross morphological characteristics (odor, texture, and color) that a trained officer could clearly distinguish among them. This court takes judicial notice that any layperson knows what ground coffee looks and smells like!
Finally, the DEA study also tested a number of essential oils: cardamom; aniseed; patchouli; camphor; caraway; clove; fennel; nutmeg; peppermint; sandalwood; Peruvian balsam; parsley; cumin; spearmint and coriander.
Although not discussed by the People in their motion papers, Patchouli oil also gave a false positive result. Patchouli according to the American Heritage Dictionary of the English Language, New College Edition (at 960 [1978]) means: "1. Any of several Asiatic trees of the genus Pogostemon, especially P. patchouly and P. cablin having leaves that yield a fragrant oil used in the manufacture of perfumes. 2. A perfume made from this oil.” Since marihuana has been recognized as a relatively cheap street drug (see, People v McMillan, 125 Misc 2d 177; People v Paul, 133 Misc 2d 234) this court can hypothesize no scenario where a drug dealer would consider it financially rewarding to coat a nonmarihuana substance with a precious, highly expensive perfume oil like Patchouli oil in order to sell it at a price far below the cost of a perfume!