OPINION OF THE COURT
Judith Lieb, J.
*59 The issue before the court is whether a complaint charging the defendant with the misdemeanor of criminal possession of a controlled substance, which contains an allegation that a police officer established that the substance possessed by the defendant was cocaine by means of a field test but not a laboratory chemical analysis, was converted into an information by the filing of a report of the field test results.
The defendant moves pursuant to CPL 30.30 for dismissal of the complaint. In support, he argues that the People did not convert the complaint into an information within the allowable CPL 30.30 time, because, as contended by the defendant, conversion could only be effected upon the filing of a laboratory chemical analysis report, which occurred after the CPL 30.30 time had run. The People assert that by filing a report of the field test results before the CPL 30.30 time period had expired, they converted the complaint into an information.
If the filing of the report of the field test results was sufficient in this case to convert the complaint into an information, then the People have not exceeded their time to be ready for trial under CPL 30.30. (See, decision and order dated Jan. 11, 2000, the parties’ familiarity with which is assumed.) If, on the other hand, the complaint was not converted into an information until the People filed the report of a laboratory chemical analysis, then they have exceeded their time to be ready for trial under CPL 30.30 and the case must be dismissed. Thus, the defendant’s motion to dismiss turns on the question of whether, in this case, the People converted the complaint into an information with the filing of a report of the field test results.
Because I conclude that the complaint was converted into an information upon the filing of the field test report, which occurred within the allowable CPL 30.30 time, the defendant’s motion to dismiss pursuant to CPL 30.30 is denied.
Facts
On December 14, 1998, the defendant was arraigned on the charge of criminal possession of a controlled substance in the seventh degree in violation of Penal Law § 220.03. The complaint contains the following allegations: Police Officer Ludlow told the complaint’s deponent that Officer Ludlow had observed the defendant in possession of “1 bag containing a white rock-like substance alleged to be crack/cocaine” and that Officer Ludlow “believes the above substances are what they are alleged to be based upon his professional training as a police of *60 ficer in the identification of drugs and his prior experience as a police officer in drug arrest [sic], and observations of the packaging which is characteristic of this type of drug.”
On February 25, 1999, the People filed a supporting deposition from Officer Ludlow and a report reflecting the positive results of a field test performed by Police Officer Steven Cohan and, for the first time, declared their readiness for trial. According to the report, Officer Cohan conducted a field test on the substance recovered from the defendant, with positive results for cocaine/cocaine salts and base reagent. Further, according to the report, Officer Cohan had previously conducted 20 or more field tests, although the report does not state whether the field tests with which Officer Cohan had prior experience were of the same kind as that he used on the substance in this case.
On July 9, 1999, the People filed a report of a laboratory analysis confirming that the substance allegedly seized from the defendant was cocaine.
By affirmation of Assistant District Attorney (ADA) Nadia Chanza, dated May 19, 2000, the People state as follows: the field test performed by Officer Cohan on the substance recovered from the defendant was a cocaine/cocaine salts and base reagent test, the equivalent of the Scott-Reagent test. This particular version of the Scott-Reagent test is manufactured by ODV, Inc., which distributes the test under the brand name “Narco-Pouch.” Another company, NIK Public Safety, Inc., distributes the same test under the brand name “Narcotic Identification Kit” (NIK).
According to the President of ODV, Inc., as reported by ADA Chanza, the Narco-Pouch is used in 59 countries and by all Federal law enforcement agencies. Versions of the Scott-Reagent test are used by local police departments in all 50 States, including the New York Police Department.
According to Ms. Chanza’s affirmation, the New York Police Department began to use the Scott-Reagent field test in 1995, in New York County. The Police Department expanded its use of the field test to Bronx County, Kings County and Richmond County in 1996. Ms. Chanza further affirmed that the New York Police Department has verified the accuracy of its field tests by comparing the results of the field tests with the results of laboratory chemical analyses, and that for all Scott-Reagent field tests performed since 1995 by the New York Police Department, there has been a 99.55% accuracy rate. Further, for the first four months of the year 2000, the New York Police Depart *61 ment has documented a 99.71% accuracy rate citywide and a 99.68% accuracy rate for Bronx County.
Discussion
The defendant argues that the court should grant his motion to dismiss because the filing of a field test report in this case was insufficient to convert the complaint into an information and that a laboratory analysis report, which was not filed within the time allowable under CPL 30.30, was required for conversion. The defendant requests, in the alternative, that the court conduct a hearing under Frye v United States (293 F 1013 [DC Cir 1923]), and People v Wesley (83 NY2d 417 [1994]), to determine whether the results of a Scott-Reagent field test are generally accepted within the relevant scientific community and, if not, that the court then grant his motion to dismiss.
A few courts have addressed the question of whether the filing of a report of field test results is sufficient to convert a misdemeanor complaint into an information and have reached different conclusions. (Compare, e.g., People v Escalera, 143 Misc 2d 779 [Crim Ct, NY County 1989] [holding that a misdemeanor complaint was converted into an information upon the filing of a field test report showing the presence of marihuana, where the modified Duquenois-Levine field test used was established to be highly reliable], with People v Brightman, 150 Misc 2d 60 [Dist Ct, Nassau County 1991] [holding that the filing of a field test report showing the presence of cocaine was not sufficient to convert a misdemeanor complaint into an information].) Two decisions of the New York Court of Appeals, which postdate these cases, have considered whether the results of a field test were sufficient to establish the presence of a controlled substance in other contexts — namely, the sufficiency of the evidence to support a Grand Jury indictment (People v Swamp, 84 NY2d 725 [1995]), and the facial sufficiency of a juvenile delinquency petition (Matter of Angel A., 92 NY2d 430 [1998]) — and have answered the question affirmatively.
In Swamp (supra), the Court of Appeals held that the People are not required to submit the results of a laboratory chemical analysis of a substance seized from a defendant in order to support a Grand Jury indictment for cocaine possession. Instead, the People could rely on a Customs inspector’s observations that led him to conclude that the defendant possessed cocaine, including that the substance was contained in telltale packaging and looked like crack-cocaine, and drug par *62 aphernalia was.in the defendant’s car, when accompanied by positive results of the Scott-Reagent field test. The inspector testified before the Grand Jury as to the training he had received and the extensive experience he had in performing the field test over 1,000 times. Noting that the Scott-Reagent field test is “routinely relied upon by law enforcement to determine the presence of a controlled substance” (People v Swamp, 84 NY2d, at 731), the Court of Appeals concluded that this evidence “provided far more support for the Grand Jury’s determination than the showing found insufficient in People v Dumas (68 NY2d 729 [1986]), where the officer simply asserted that the defendant possessed marihuana without indicating the basis for that claim.”[1] (People v Swamp, supra, at 731.)
By a 6-1 decision, the Court of Appeals in Swamp (supra) rejected the view of the dissent that a single field test report does not reliably establish the presence of cocaine. “While results of a single field test may not carry great weight, questions of adequacy of evidence are for the Grand Jury to resolve.” (People v Swamp, supra, at 733.) The Court of Appeals also rejected the argument of the Swamp defendant that the inspector’s testimony was deficient because he was not an expert in the area of drug analysis. Instead, according to the Court: “prima facie evidence of the presence of a controlled substance need not be based on expert testimony. All that is required is a ‘reliable basis’ for inferring such presence.” (Supra, at 733 [citation omitted].) While the opinion of a layperson would not meet that standard, according to the Court of Appeals, the opinion of the officer in Swamp, who, while not an expert, had extensive familiarity with drugs and special training in handling and identification of controlled substances, would meet that standard. The Court of Appeals, however, did not decide whether evidence from the field test could be excluded as unreliable under Frye (293 F 1013, supra) because, unlike the case at.bar, the issue was not raised before the trial court. (People v Swamp, at 732, n 2.)
The Court of Appeals again, this time in Angel A. (supra), considered the adequacy of a field test to establish the pres *63 ence of narcotics, and expanded its holding in Swamp (supra). In Angel A., the Court of Appeals held that a juvenile delinquency petition, which accused a youth of criminal sale and possession of a controlled substance, is legally sufficient where the petition was accompanied only by the supporting deposition of an undercover officer who stated that the youth had sold him four glassines containing heroin, and further stating that the presence of the controlled substance was established by a “NIK” field test, the same test as that used in the present case. Citing its decision in Swamp, the Court of Appeals stated that “[Ultimately, the Court [in Swamp] held that an uncontradicted field test result could provide legally sufficient evidence of the presence of a drug at the Grand Jury stage, although meeting the threshold standard of legal sufficiency is not the same as establishing guilt beyond a reasonable doubt at trial.” (Matter of Angel A., at 434.)
The Court of Appeals in Angel A. (supra) went on to reject the petitioner’s view that the undercover’s assertions of expertise were conclusory and insufficient as a matter of law. The officer in that case testified that he had been trained in the identification and recognition of controlled substances and had conducted approximately 20 field tests of the same kind he conducted in that case. This was held to have been sufficient, in light of the Court’s holding in Swamp (supra) that only a “reliable basis” for inferring the presence of a controlled substance was required. The Angel A. Court also rejected the petitioner’s arguments related to the officer’s ability to conduct a field test. “[(¡Questions regarding the ability of the officer conducting the field test go to the weight and not the sufficiency of the evidence.” (Matter of Angel A., at 435.) Finally, in Angel A., the Court considered the Frye issue left unanswered in Swamp. According to the Court in Angel A, “although the reliability of scientific evidence can affect its admissibility when the reliability is challenged at trial, at the preliminary stage where a court must determine whether the evidence is legally sufficient, the presentment agency is not required to anticipate such an objection and establish the field test’s general acceptance within the scientific community.” (Supra, at 435.)[2]
The standard for determining the sufficiency of a misdemeanor information is identical to that for determining the *64 sufficiency of a juvenile delinquency petition. [3] Therefore, Angel A. (supra) (which was guided by Swamp [supra]) controls the decision in this case. As a consequence, the filing of the report of a Scott-Reagent field test, accompanied by sufficient allegations by a police officer, may provide a “reliable basis” for inferring the presence of cocaine for purposes of a misdemeanor information.
The defense attempts to distinguish Swamp (supra), arguing that in contrast with the Grand Jury testimony at issue in Swamp, the complaint and accompanying documents in the present case fail to allege the chemical reactions of the field test, whether the test procedures were properly conducted, and the training and experience of the officer in identifying drugs or conducting the kind of field test he used in this case. The defense further argues that the complaint and accompanying documents are defective because they fail to allege the error rate for the test or its acceptability in the scientific community. The Court of Appeals in Angel A. (supra) rejected these and similar arguments, noting that under Swamp, the People were only required to present proof that there was a “reliable basis” for inferring the presence of a controlled substance and that such basis was established through the observations of a trained police officer and the positive results from a Scott-Reagent field test.[4]
*65 The facts alleged in the present case provide a substantially greater basis for inferring the presence of cocaine than the conclusory statement found insufficient in Dumas (supra). (See, n 1, supra.) In the present case, the People have provided uncontroverted evidence concerning the reliability of the Scott-Reagent field test that was used on the substance allegedly seized from the defendant. According to the proof presented, the New York Police Department has documented an accuracy rate of 99.55% since its officers began using the Scott-Reagent field test in 1995. Moreover, law enforcement agencies in all 50 States and at least 59 countries rely on the Scott-Reagent field test. (See, Ms. Chanza’s affirmation.) In light of these facts, this court finds that the allegations in the present case, if true — the positive results of the Scott-Reagent field test and the observations by a trained police officer of the substance and its packaging — provide a “reliable basis” for inferring the presence of cocaine.
Finally, the defendant requests that this court conduct a Frye/Wesley hearing to determine the accuracy of the Scott-Reagent field test. That application is denied in light of Angel A.’s instruction that the reliability of scientific evidence is only a question for trial, and for the independent reason that the uncontroverted facts presented sufficiently demonstrate the accuracy of the Scott-Reagent test at the charging stage of the case.

. In Dumas (supra), the complaint contained the allegation that an undercover officer informed the complaint’s deponent that the defendant had sold marihuana to the undercover officer. The Court of Appeals concluded that the complaint was facially insufficient because the allegation that the defendant had sold “marihuana” was merely a “conclusory statement” of the undercover officer, and the complaint did not provide the facts from which the undercover officer had drawn his conclusion.

. See also, Matter of Jayson P., 243 AD2d 266, 267 (1st Dept 1997) (holding facially sufficient Family Court petitions containing supporting depositions by undercover officers saying that they had purchased two glassines of heroin from juveniles, that the officers had field tested the substance using the NIK test, that the NIK test is a reliable test routinely used, that the of *64 fleers had received extensive training in the identification of controlled substances, and that each had previously performed at least 20 NIK tests; and rejecting juveniles’ “attack on the capability of the officers to perform an accurate field test and upon the reliability and acceptance of the test results,” because such issues go “only to the weight and not the sufficiency of the evidence”).

. A legally sufficient misdemeanor complaint must set forth “facts of an evidentiary character” that demonstrate “reasonable cause” to believe that the defendant committed the charged offenses. (CPL 100.15 [3]; 100.40 [1] [b]; People v Dumas, 68 NY2d 729 [1986], supra.) In order to convert the complaint into an information, the People must set forth “[n] on-hearsay allegations * * * [that] establish, if true, every element of the offense charged and the defendant’s commission thereof.” (CPL 100.40 [1] [c]; 100.15 [3]; People v Alejandro, 70 NY2d 133 [1987].) Likewise, a juvenile delinquency petition is legally sufficient “when the verified petition and any supporting depositions not only ‘provide reasonable cause to believe that the [juvenile] committed the crime or crimes charged’ * * * but also ‘establish, if true, every element of each crime charged and the [juvenile’s] commission thereof.’ ” (Matter of Angel A., 92 NY2d, supra, at 433 [citations omitted].)

. The defendant also alleges that the complaint was not converted into an information because the People did not allege through nonhearsay facts what field test was used on the substance allegedly seized from the defendant. The absence of this detail does not detract from the “reliable basis” *65 provided by the combination of allegations in the complaint, the supporting deposition and the field test report and therefore is not required to be part of the charging instrument. '