Patti WEBB, et al., Appellants

v.

Brian SHARP, et al., Appellees.

No. 2005–SC–000271–DG.

Supreme Court of Kentucky.

May 24, 2007.

Rebecca Baylous, Emily Dennis, Justice and Public Safety Cabinet, Office of Legal Services, Frankfort, Counsel for Appellants Patti Webb, Liggett Morris, Rick Williams, and Brian Lile.

Brian Thomas Ruff, Assistant Public Advocate, Department of Public Advocacy, Post–Conviction Branch, LaGrange, Counsel for Appellees Brian Sharp and Dontrae Thomas.

Opinion of the Court by Justice CUNNINGHAM.

## I.  INTRODUCTION

This case presents the issue of sufficient evidence in a prison disciplinary hearing before the Department of Corrections (hereinafter the Department). In particular, the parties have raised a question as to the evidentiary value of two field tests: the Duquenois–Levine Reagent test, used to detect the presence of components of marijuana; and the Marquis Reagent test, used to screen for numerous substances, including amphetamines, heroin, and opium alkaloids. The Appellees, on two separate occasions each, were involved in incidents at Green River Correctional Complex (GRCC) that led to disciplinary actions. In addition to other counts, each inmate was charged with two counts of possession of dangerous contraband. At the conclusion of evidentiary hearings, which included submission of the results of the field tests in question, both inmates were found guilty and were penalized with the loss of good time credit, placed in disciplinary segregation, and suffered the loss of privileges.

Sharp and Thomas challenged the findings by filing separate declaratory judgment actions in the Muhlenberg Circuit Court. In Sharp's case, the circuit court noted the inmate had not challenged the findings as they related to one count of tampering with physical evidence. The court then rejected Sharp's claims as they related to one count of physical action against an employee of the institution. On the two counts dealing with possession of dangerous contraband, the court found the Appellants had failed to establish the reliability of either of the field tests. Thus, the court concluded the Appellants had not met the "some evidence" standard required in disciplinary proceedings. The Appellants in Sharp's action filed a timely appeal challenging the court's conclusions as they related to the two counts of possession of dangerous contraband. Sharp filed a timely cross appeal challenging, among other things, the court's decision as to one count of physical action against an employee of the institution.

As with Sharp, the court granted Thomas a declaratory judgment on the two counts of possession of dangerous contraband. Likewise, the court denied Thomas's challenge to the one count of physical action against an employee of the institution. Again the court's reasoning rested on the fact that the Appellants had failed to present any evidence that the Duquenois–Levine Reagent test was reliable. The court concluded that even with the additional facts surrounding the incidents involving Thomas, the Appellants failed to demonstrate by "some evidence" that Thomas had possessed dangerous contraband. The Appellants in Thomas's action filed a timely appeal.

The Court of Appeals, hearing the cases together, returned a two-to-one decision affirming the trial court. The majority rejected the arguments raised by Sharp in his cross appeal, and that portion of the decision has not been appealed. The majority then agreed with the circuit court's conclusion that the "some evidence" standard was not met as to the possession of

dangerous contraband counts. In particular, the majority emphasized that it was the officers' burden to present evidence as to the reliability of the field tests. Having failed to do so, the majority found the scientific evidence was not reliable.

In his opinion concurring in part and dissenting in part, Judge Knopf disagreed with the majority on the possession counts. Judge Knopf noted that other evidence had been presented to the hearing officer concerning the nature of the substance and the facts surrounding its discovery. Further, he noted that other jurisdictions have accepted the field tests, in particular under the reduced burden of the "some evidence" standard. Finally, Judge Knopf noted that the inmates had failed to raise the reliability of the field tests before the adjustment committee or the warden and thus were precluded from raising it for the first time in the declaratory judgment action.

This Court accepted discretionary review on the issue of sufficiency of evidence and the value of the field tests in prison disciplinary proceedings. Having concluded the "some evidence" standard was met in three of the four incidents, without consideration of the field tests, we affirm in part and reverse in part.

## II. FACTUAL BACKGROUND

Sharp's first incident occurred on May 30, 2003. During a routine search of the cell Sharp shared with inmate Whitlow, Officer Watson conducted a strip search of Sharp. During the strip search Watson observed a white object protruding from Sharp's anus. When Watson radioed for a supervisor, Sharp attempted to reach the toilet. Having refused an order to stop, Officers Watson and Romans attempted to restrain him. While Sharp managed to drop the object in the toilet, the officers were able to prevent him from flushing the packet. Additional officers entered the cell, restrained Sharp, and recovered a clear bag from the toilet. The bag contained a green leafy substance. Lieutenant W. Thomas performed the Duquenois–Levine Reagent test on the substance with the result being positive for marijuana.

Lieutenant L. Morris, acting as hearing officer in this matter, considered among other things the evidence presented by Officer Romans in his report, the follow-up investigation conducted by a supervisor, and the results of the Duquenois–Levine Reagent test performed by Lieutenant W. Thomas. Sharp, in addition to waiving the right to call any witnesses, chose not to testify. Thus, Sharp neither denied ownership nor challenged the nature of the substance. The hearing officer found Sharp guilty of one count of possession of dangerous contraband, and one count of tampering with physical evidence. Sharp appealed the findings to Warden Webb. In his appeal he challenged the chain of custody of the marijuana and aspects of the color changes that occurred in the Duquenois–Levine Reagent test. Warden Webb denied his appeal.

Sharp's second incident occurred on June 8, 2003. During a routine cell search, Officer Hope discovered a white substance wrapped in toilet paper lying on the floor. Sergeant Rich, standing at the door with Sharp, took pictures of the substance and where it was found. Officer Hope secured the substance. Lieutenants J. Elliott and M. Morris brought over a Marquis Reagent test kit. When the substance was tested by Sergeant Rich, the result was positive for amphetamines.

In a follow-up investigation, Lieutenant B. Cooney interviewed the officers involved and confirmed the information in their reports. When Lieutenant Cooney interviewed Sharp, he stated that the officers had kicked the paper, which had been

laying outside his cell, into his cell when they came in to search.

Lieutenant L. Morris again served as the hearing officer reviewing Sharp's case. Lieutenant L. Morris considered the report of the officer involved, the results of the investigation conducted by Lieutenant Cooney, the results of the Marquis Reagent test, and the statements by Sharp. Sharp, who had made statements during the investigation, once again chose not to testify nor did he call any witnesses at the hearing. The hearing officer found Sharp guilty of one count of possession of dangerous contraband, and one count of tampering with physical evidence. Once again, Sharp appealed the findings to Warden Webb. In his appeal he challenged the chain of custody for the substance and asserted that the substance was not a drug. Warden Webb denied his appeal.

The first incident involving Thomas occurred July 19, 2003. During visitation, officers observed what appeared to be a transfer of some sort of contraband. Officer Hope escorted Thomas from the visitation room. The officer, observing an object in Thomas' right hand, instructed him to surrender the item. Thomas pulled away from Officer Hope and placed the object, a dark colored substance wrapped in a paper towel, in his mouth. When Officer Hope reached for his right hand, Thomas pushed the officer into a wall causing her to strike her right shoulder and upper arm. In the ensuing struggle, Officer Hope, with the assistance of three additional officers, managed to place Thomas in handcuffs. Thomas was placed in the special management unit. Lieutenants M. Morris and Jenkins, upon observing Thomas chewing the object in his mouth, ordered him to spit it out. Thomas refused. Officers then ordered him to open his mouth. When Thomas complied with the order, Lieutenant Jenkins observed a green leafy substance. The officers stated the substance smelled like marijuana. Thomas, upon receiving another order to spit the substance out, complied. Lieutenant M. Morris performed a Duquenois–Levine Reagent test on the substance with the result positive for marijuana.

Lieutenant L. Morris, acting as hearing officer for this incident, considered the reports submitted by Lieutenant M. Norris, Lieutenant Jenkins, Sergeant Gibson, Officer Hope, and Registered Nurse M. Croley. Lieutenant L. Morris took note of the officers' observations concerning the color, texture, and smell of the substance, as well as the results of the Duquenois–Levine Reagent field test. Thomas, in addition to waiving his right to call witnesses, chose to remain silent. Thus, Thomas neither denied ownership nor challenged the nature of the substance recovered from him during the incident. The hearing officer found Thomas guilty of one count of physical action against an employee, and one count of possession of dangerous contraband. In his appeal to Warden Webb, Thomas claimed (1) he had not been given the opportunity to consult with his legal aide 24 hours prior to the hearing;[1] (2) Lieutenant L. Morris should not have been allowed to serve as the hearing officer due to a prior history of conflicts with Thomas; (3) he had not received 24 hours notice of the hearing or charges; and (4) there was no chain of custody concerning the substance. He did not challenge the integrity of the evidence itself. Warden Webb denied his appeal.

Thomas's second incident occurred six days later, on July 25, 2003. Thomas had been taken to the office of the Special Management Unit at the request of Lieu-

---

1. Brett Lile was assigned to serve as Thomas's legal aide in both incidents.

tenant W. Thomas, Internal Affairs, for the purpose of having his mouth checked for contraband. Unit Administrator (UA) S. Mason asked Thomas to raise his tongue. Thomas claimed his tongue was raised as far as it would go. UA Mason then had Thomas move his tongue from side to side. When Thomas complied, UA Mason and Nurse S. Collins observed what appeared to be two balloons under his tongue. When Thomas refused an order to surrender the objects in his mouth, UA Mason called for a move team to assist in its removal. Thomas then bit down on the object in his mouth and attempted to swallow it. UA Mason immobilized Thomas's head to keep him from swallowing.

When the movement team arrived, they placed Thomas on his back on the floor. Thomas struggled to resist the move and continued to refuse to open his mouth. Two officers were required to force his mouth open while a padded set of tongue depressors was inserted to prevent Thomas from closing his mouth. UA Mason then performed a finger sweep that resulted in the recovery of two balloons. Lieutenant W. Thomas performed a Duquenois–Levine Reagent test on the substance with the result positive for marijuana.

Lieutenant R. Williams served as the hearing officer for this incident. Lieutenant R. Williams considered reports from nine of the responding staff, including reports by UA Mason and Nurse S. Collins. In addition, Lieutenant R. Williams considered the results of the investigation conducted into the incident by Lieutenant P. Walter. Lieutenant Walter indicated that during his investigation Thomas had chosen to remain silent and thus gave no explanation as to the ownership or nature of the substance recovered. The hearing officer found Thomas guilty of one count of possession of a dangerous substance. Thomas, in his appeal to Warden Webb,

challenged the findings claiming (1) insufficient findings of fact; (2) a failure to list reasons for the penalty imposed; and (3) the improper imposition of additional punishment in that he was required to pay the "cost of all drug tests." He did not challenge the integrity of the evidence nor claim it was not contraband. Warden Webb denied the appeal.

## III.  ANALYSIS

### A.  Framework For Review

Our society expects our prisons to be both humane and secure. The former consideration encompasses not only the requirement that the residents not be treated cruelly or physically abused, but also that they be treated with respect. This later requirement has evolved over the years to establish certain due process requirements in the imposition of prison discipline.

■ The United States Supreme Court has recognized that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). *See also Superintendent, Mass. Correctional Inst., Walpole v. Hill,* 472 U.S. 445, 456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). In balancing the divergent interests between the institution's need for security and the inmates' constitutional rights, the U.S. Supreme Court has concluded that due process requirements in prison disciplinary hearings, where the loss of good time credit is at stake, include:

(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his

defense; and (3) a written statement by the factfinder (sic) of the evidence relied on and the reasons for the disciplinary action.

*Hill,* 472 U.S. at 454, 105 S.Ct. 2768, *citing Wolff,* 418 U.S. at 563–67, 94 S.Ct. 2963. The due process requirements set out in *Hill* have been recognized and applied in Kentucky. *See Smith v. O'Dea,* 939 S.W.2d 353, 357 (Ky.App.1997). Significantly, the right against self-incrimination contained in the Fifth Amendment of the United States Constitution and the progeny of cases interpreting this right have not been imposed upon prison disciplinary proceedings. Thus, silence, or the failure to assert a claim of innocence, can be considered for purposes of prison disciplinary hearings.

At the same time, the implementation of procedural safeguards in the punishment for rule infractions must be tempered by the serious concern for prison security and the safety of both inmates and staff. The United States Supreme Court recognized this principle when it noted, "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Hill,* 472 U.S. at 456, 105 S.Ct. 2768, *citing Wolff,* 418 U.S. at 562–63, 567–69, 94 S.Ct. 2963. Thus, the Court concluded that minimum due process requirements are met if "the findings of the disciplinary board are supported by some evidence of record." *Hill,* 472 U.S. at 454, 105 S.Ct. 2768. Again, this standard was applied in Kentucky in *Smith v. O'Dea.* 939 S.W.2d at 356.

In applying the "some evidence" standard, the Court in *Hill* noted that the analysis "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence." 472 U.S. at 455, 105 S.Ct.

2768. Nor does the "some evidence" standard require that the evidence logically preclude any conclusion but the one reached by the disciplinary board. *Id.* at 457, 105 S.Ct. 2768. Rather, the "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. 2768.

Clearly, courts are called upon to use a common sense approach to balancing the divergent interests at stake in this analysis. The U.S. Supreme Court in *Hill* concluded that this balance is met by "[r]equiring a modicum of evidence to support a decision to revoke good time credits[.]" *Id.* at 455, 105 S.Ct. 2768. This would "help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.*

This framework, established to balance the divergent interests involved in prison disciplinary hearings, satisfies the principle that "[w]hen all is said and done, common sense must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Ins. Comm'n,* 450 S.W.2d 235, 236–37 (Ky.1970). There is perhaps no other area of the law where this principle is more relevant than in prison discipline litigation.

**B. The Failure of the Department to Establish Evidence of Reliability and Lay a Foundation Precludes Reliance on the Field Tests in this Case**

■ In challenging the Appellants' findings of guilt as to the counts dealing with possession of a dangerous substance, both Appellees directed their arguments at the field tests used to screen the substance for contraband. The Appellees argue the tests should not be considered because the Appellants failed to present any evidence

as to reliability. Further, the Appellees point out that the Appellants failed to establish any foundation for the results. In particular, they note (1) there was no evidence as to the training and experience of the officers performing the field tests; and (2) there was no evidence as to the procedures followed while conducting the tests.

The Appellants respond by arguing the Appellees have cited to no authority that would indicate the tests have been rejected as unreliable. To the contrary, the Appellants cite to several cases from other jurisdictions that have considered the tests and accepted them as reliable. In addition, the Appellants make the argument that the Department has used the field tests for many years without objection.

■ Before we can consider the question of whether the field tests used in this case would satisfy the "some evidence" standard, a threshold question as to reliability must be answered. For "[a]lthough a prison inmate facing administrative disciplinary proceedings does not have the same procedural safeguards as does a person facing criminal prosecution or even parole revocation, fundamental fairness dictates that the evidence relied upon to punish him at least be reliable." (Internal citation omitted.) *Byerly v. Ashley,* 825 S.W.2d 286, 288 (Ky.App.1991). *See also Hensley v. Wilson,* 850 F.2d 269, 276 (6th Cir.1988); *O'Dea v. Clark,* 883 S.W.2d 888, 892 (Ky.App.1994); *Stanford v. Parker,* 949 S.W.2d 616, 617 (Ky.App.1996). In this case the Appellants point to no evidence of record that supports their claim that the field tests used are reliable.[2]

Further, the Appellees correctly note that the Appellants can point to no evidence of record that would establish a foundation for admitting the test results even if they had been accepted as reliable. In *Byerly v. Ashley,* the Kentucky Court of Appeals recognized that test results from urine samples would be admissible only if a sufficient chain of custody was established as part of the evidentiary foundation. 825 S.W.2d at 288. Likewise, in *Hensley v. Wilson* the court required the fact finder to consider whether the statement had in fact come from the confidential informant, the reliability of the informant, and the basis for the investigator's opinion as to the informant's credibility. 850 F.2d at 276. The requirement that foundation evidence be presented was applied specifically to the results of the type of field test at question *sub judice* in one of the cases cited by the Appellants, *Davis v. McClellan,* 202 A.D.2d 770, 608 N.Y.S.2d 741 (N.Y.App.Div.1994). In *Davis* the court noted, "Before such test results may be utilized, however, a proper foundation must be laid, i.e., it must be demonstrated that, *inter alia,* proper testing procedures were followed." *Id.* at 742.

Given the fact that the Appellants have failed to point to any evidence as to either reliability or foundation, we are left to conclude the field tests utilized in each of the four incidents cannot serve to meet the "some evidence" standard required to support the punishment imposed. This decision does not foreclose the admission of such tests in future cases where the proper evidentiary requirements are met.

---

2. One of the cases cited by the Appellants, *People v. Escalera,* 143 Misc.2d 779, 541 N.Y.S.2d 707 (N.Y.City Crim.Ct.1989), offers an example of how the Department could establish a record on the question of reliability. In that case the State used a combination of statements from personnel in other agencies that rely on the test, the results of a test conducted by the New York City Police Department as to the accuracy of the field test, and the results of a study conducted by the Drug Enforcement Agency concerning the accuracy of the test.

Our analysis of this issue impacts the four separate incidents in different ways. As to the second incident involving Sharp, occurring June 8, 2003, we note that the field test served as the principal evidence concerning the possession count. For this reason we affirm the decision of the Court of Appeals and the circuit court in its decision granting declaratory judgment in favor of Sharp.[3] As to the remaining three incidents, all involving possession of a substance believed to be marijuana, our analysis does not resolve the issue. In each of those three incidents, there were additional facts considered by the hearing officer. We must now consider whether those facts, without consideration of the field tests, are sufficient to meet the some evidence standard.

## C. The Facts Surrounding the Discovery of the Marijuana in Three of the Incidents Satisfy the Some Evidence Standard

█ In reaching its decision, the circuit court focused on the field tests. Once it determined the field tests did not satisfy reliability requirements, the circuit court concluded the "some evidence" standard simply had not been met. The Appellants argue this ignores the additional facts surrounding the recovery of the other substances. It is Appellants' position that even without the field tests, the facts surrounding the three incidents involving marijuana satisfy the "some evidence" standard. The Appellees respond by arguing the remaining evidence is not suffi-

cient to satisfy the "some evidence" standard.

Rather than review the facts underlying the three incidents involving marijuana, we will set out a general summary of circumstances common to each incident. In each case, officers observed and reported their first hand impressions of the substance recovered; including odor, texture, and color. As noted in *Cooper v. Commonwealth*, "It is a fundamental principle that a policeman may "observe" with any of his five senses[.]" 577 S.W.2d 34, 36 (Ky.App. 1979).[4] See also *Commonwealth v. Hagan*, 464 S.W.2d 261, 264 (Ky.1971), wherein this Court recognized that an officer could base his opinion on what he see or hears. In addition to the officers' impressions as to the nature of the substance recovered, the hearing officer heard evidence as to the way the inmate reacted when the substance was discovered. In each case the inmate attempted to conceal the substance. In all three of the incidents, the inmates went to great lengths to destroy the substance either by flushing it down the toilet or by swallowing it. In fact, in two of the incidents the inmates openly scuffled with the officers in an attempt to prevent the officers from recovering the substance. Finally, in each of the three incidents involving marijuana, the inmates elected not to testify or assert that the substance was not what the officers believed it to be. As a result, the inmates neither denied ownership nor challenged the nature of the substance recovered.

---

**3.** During oral argument, the attorney for Appellants suggested this incident was moot. The attorney noted that in accordance with the Warden's ruling on Sharp's appeal, the incident would be removed from his file if the white powder did not come back positive as a drug. Follow-up tests were not done in the three incidents involving marijuana.

**4.** The *Cooper* case was reversed in part on other grounds by *Mash v. Commonwealth*, 769 S.W.2d 42 (Ky.1989) which in turn has since been overruled by *Commonwealth v. Mobley*, 160 S.W.3d 783 (Ky.2005).

We are mindful of the principle that "common sense must not be a stranger in the house of the law." *Cantrell, supra.* Common sense supports the hearing officers' conclusions that in each of the incidents involving marijuana, the inmates possessed dangerous contraband. In reviewing prison disciplinary actions, we recognize that the standard of proof is the "some evidence" standard. Further, the "some evidence" standard does not require that the evidence logically preclude any conclusion but the one reached by the hearing officer. Such is the case *sub judice.* The facts surrounding the three incidents involving marijuana, even with the field test results excluded, are sufficient to conclude there is "some evidence" of record to support the decision reached by the hearing officers in Sharp's May 30, 2003 incident, and in the incidents involving Thomas occurring on July 19, 2003, and July 25, 2003. For this reason we reverse the Court of Appeals, and find the circuit court erred in granting declaratory judgment in favor of the Appellees as to these three incidents.

## IV. CONCLUSION

Having concluded the Appellants failed to present evidence as to either reliability or foundation, we are unable to reach the issue of whether either of the field tests involved, standing alone, would satisfy the "some evidence" standard. Our decision does not foreclose the admission of such tests in future cases where the proper evidentiary foundation is met.

Having determined the field tests cannot serve to satisfy the "some evidence" standard under these circumstances, we conclude the Court of Appeals and the circuit court did not err as it relates to the white powder discovered in Sharp's cell and thus affirm. However, our review of the record and the applicable law leads us to reverse as to the three incidents involving marijuana.

LAMBERT, C.J.; McANULTY and SCHRODER, JJ., concur.

MINTON, NOBLE and SCOTT, JJ., concur in the result reached by the majority but believe that the majority errs by considering the merits of the reliability of the field tests. Neither Thomas nor Sharp questioned the reliability of the field tests during the administrative disciplinary process. As Judge KNOPF noted in his separate opinion, the failure to raise an issue before an administrative body precludes a litigant from raising that issue in an action for judicial review of the agency's action. *O'Dea v. Clark,* 883 S.W.2d 888, 892 (Ky. App.1994).