RENDERED: APRIL 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1890-MR

TROY COX                                                 APPELLANT

                     APPEAL FROM BOYLE CIRCUIT COURT
v.                  HONORABLE DARREN W. PECKLER, JUDGE
                       ACTION NO. 19-CI-00340

KATHLENE KENNY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Troy Cox, an inmate at the Northpoint Training Center
(NTC), appeals from the Boyle Circuit Court's dismissal of his declaratory
judgment action in which he requested a review of a prison disciplinary
proceeding. For the reasons set forth herein, we affirm.

        On December 29, 2018, prison authorities found two orange film
strips which were identified as Suboxone. The strips were located on top of Cox's

locker under his television. Cox was charged with possession or promoting dangerous contraband. Corrections Policies and Procedures (CPP) 15.2 (Category VI) (3) classifies possessing or promoting dangerous contraband as a major violation. The CPP defines dangerous contraband in conformity with Kentucky Revised Statutes (KRS) 520.010(3) which includes "any controlled substance[.]" Suboxone, a trade name for buprenorphine, is a controlled substance and is listed as Schedule V narcotic analgesic. Although legitimately prescribed by physicians in the treatment of addiction, Suboxone is itself subject to widespread abuse.

Cox's disciplinary hearing was conducted on January 3, 2019. Neither Cox nor his counsel called any witnesses or made any statements. The NTC adjustment committee found Cox guilty, divested him of 60 days of good time credit, and assessed him fifteen days of disciplinary segregation.

Cox filed a petition for declaration of rights with the Boyle Circuit Court against NTC Warden Brad Adams (the warden), Adjustment Officer Allyson Lambert, and Kathleen Kenny. On September 17, 2019, while Cox's petition was pending, the warden conducted a review of the matter and determined to vacate Cox's loss of good time credit leaving him to only serve fifteen days of disciplinary segregation.

The respondents filed a motion to dismiss based upon the fact that, once Cox's loss of good time credit was vacated, Cox could no longer claim

deprivation of a protected liberty or property interest and, therefore, his claims were moot. The circuit court granted the motion. In its order of dismissal, the circuit court noted that an inmate has no constitutional right to be held in a prison's general population and does not possess a protected property interest in freedom from segregation.

On appeal, Cox argues that the "NARK II" field test used to determine the substance found was insufficient, on its own, to sustain his conviction and argues that no proper foundation was laid for establishing the accuracy of the test or whether the test was properly conducted. Cox also argues that his conviction should not "escape judicial review" only because his good time credits were ultimately restored, claiming such actions are arbitrary and capricious in violation of Section 2 of the Kentucky Constitution.

We are authorized to affirm the lower court's decision for any reason supported by the record. *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 576 (Ky. 2009). Dismissal of Cox's petition pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f) for failure to state a claim upon which relief can be granted is a pure question of law. Therefore, an appellate court reviews such matters *de novo*. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010).

While "prisoners do not shed all constitutional rights at the prison gate, . . . [d]iscipline by prison officials in response to a wide range of misconduct

falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995). When a prisoner establishes a valid liberty interest that is entitled to protection, "the implementation of procedural safeguards in the punishment for rule infractions must be tempered by the serious concern for prison security and the safety of both inmates and staff." *Webb v. Sharp*, 223 S.W.3d 113, 118 (Ky. 2007). When due process protection is warranted is based upon the consequences of inmate discipline.

CPP 10.2 addresses the restrictions associated with the special management or special housing of inmates including those of disciplinary segregation. Restrictions under special management include reduced canteen and telephone privileges but allow inmates the opportunity to shower and shave not less than three times weekly, and to exercise outside the cell for one hour a day five days a week. Inmates still retain the same opportunities as the general population to meal service, access to barber and hair care, and to receive and send mail. They also have access to legal materials, reading and writing materials, and visitation. Importantly, as in *Sandin*, there are no differences in the conditions between the various special housing types. Therefore, Cox did not suffer "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300. In applying this test and

ruling that the prisoner had no right to due process before he was subjected to thirty days of disciplinary segregation, the Court in *Sandin* determined that the prisoner's punishment through disciplinary segregation "mirrored those conditions imposed upon inmates in administrative segregation and protective custody[,]" and "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction." *Id.* at 486, 115 S.Ct. at 2301. Numerous other cases have held that segregation for periods exceeding the 15 days served by Cox, with harsher conditions than those imposed under the Kentucky CPP, did not rise to the level of atypical and/or significant hardship. *See Marksberry v. Chandler*, 126 S.W.3d 747, 750-51 n.16 (Ky.App. 2003).

In his last argument, Cox relies on *Black v. Department of Corrections*, No. 2017-CA-001048-MR, 2018 WL 4050538, at *1 (Ky.App. Aug. 24, 2018) (unpublished), for the suggestion that the NARK II test should be considered *per se* insufficient to support his conviction. In *Black*, this Court noted that the record in a marijuana possession case did not establish that the corrections officer conducting the test followed procedure or that the results of the NARK II test were reliable. Those matters became issues for the Court of Appeals only because Black, at his hearing, denied possession of the substance and challenged the field test results. Thus, the test and the circumstances around it became issues of fact for the hearing committee subject to later judicial review. Here, however,

neither Cox nor his counsel: (1) ever denied the substance found was Suboxone; (2) ever objected to the use of, or results of, the NARK II test; or (3) ever denied that the substance found belonged to Cox. By such inaction, any belated objection to the test or its results was effectively waived. No one at NTC was required to lay any additional *pro forma* foundation for the test or its accuracy if the ultimate finding, that the substance confiscated from Cox was Suboxone, was never questioned.

In *Webb*, the Kentucky Supreme Court went on to consider whether there was other evidence in addition to a field test to establish the substance confiscated from inmates was marijuana. The Court affirmed the convictions because the inmates' reactions to the substances being discovered indicated contraband and "the inmates elected not to testify or assert that the substance was not what the officers believed it to be." *Webb*, 223 S.W.3d at 120. *See White v. Boards-Bey*, 426 S.W.3d 569, 576 (Ky. 2014) (explaining that a prisoner's silence can be considered against a prisoner in a prison disciplinary hearing). Under those circumstances, the Court ruled that even with the field tests excluded, it was "common sense" that there was "some evidence" to support the decision reached by the hearing officers. *Webb*, 223 S.W.3d at 121.

Similar to the prisoners in *Webb*, there is nothing in Cox's conduct or the record before us to make us question that the substance recovered was anything

other than contraband. The record here contains nothing other than evidence supporting the verdict reached.

Finally, pursuant to *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), we find that Cox's due process rights were adequately protected. In *Hill*, it was established that minimum due process requirements are met if "the findings of the prison disciplinary board are supported by some evidence in the record." *Id*. at 454, 105 S.Ct. at 2773. In applying this "some evidence" standard, the Court noted that the "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56, 105 S.Ct. at 2774. As such, we are unable to ascertain any procedural due process violations or arbitrary conduct in violation of Section 2 of the Kentucky Constitution from the record before us.

Accordingly, we affirm the Boyle Circuit Court's order of dismissal of Cox's petition seeking a declaration of rights for failure to state a claim on which relief can be granted.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
| --- | --- |
| Troy Cox, *pro se* <br> Burgin, Kentucky | Kristin Wehking <br> Frankfort, Kentucky |